Argued December 19, 1973, reversed and remanded March 11,
petition for review denied June 18, 1974

# STATE OF OREGON, *Appellant, v.* RALPH DOUGLAS JOHNSON (No. 33258), *Respondent.*

# STATE OF OREGON, *Appellant, v.* JOHN THOMAS IMEL (No. 33259), *Respondent.*

519 P2d 1053

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Melvin M. Menegat,* Newport, argued the cause for respondent Johnson.

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for respondent Imel. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

SCHWAB, C. J.

Defendants Johnson and Imel were arrested together on the grounds of Taft High School in Lincoln City for violation of ORS 166.045 (1)(a), which provides:

"A person commits the crime of loitering if he:

"(a) Loiters in or near a school building or grounds, not having any reason or relationship involving custody of or responsibility for a student,

or, upon inquiry by a peace officer or school official, not having a specific, legitimate reason for being there \* \* \*."

Defendants were taken to jail and thoroughly searched. Marihuana was discovered in Johnson's possession. LSD was discovered in Imel's possession. Defendants were then separately indicted for criminal activity in drugs. ORS 167.207. Each defendant then moved to suppress the drugs that were the basis of these charges. The trial court allowed each defendant's motion to suppress. The state appeals.[1]

The parties have briefed and argued these cases as though the principal questions presented were whether ORS 166.045 (1)(a) is unconstitutionally vague[2] and, alternatively, whether there was probable cause to arrest defendants for second-degree criminal trespass, ORS 164.245.[3] For the reasons stated below, we do not attempt to resolve these questions in the cases at bar. Instead, we now hold: (1) a written motion to suppress evidence must specify with particularity the grounds upon which the motion is based; and (2) in certain circumstances trial courts must state the basis of a decision to suppress evidence. Because the records before us are insufficient under both

---

[1] We previously denied motions to consolidate these cases because defendants were represented by different counsel and because we understood that the cases presented slightly different issues. However, since we have resolved both cases on the same grounds, they have been consolidated for purposes of this opinion.

[2] For a discussion of the constitutionality of statutes prohibiting loitering on school grounds, see, Annotation, 50 ALR3d 340 (1973).

[3] "(1) A person commits the crime of criminal trespass in the second degree if he enters or remains unlawfully in or upon premises.

"(2) Criminal trespass in the second degree is a Class C misdemeanor." ORS 164.245.

holdings, we reverse and remand for further proceedings.

The problems that lead us to these conclusions are well illustrated by the records in these cases. Defendant Johnson moved to suppress the marihuana seized after his arrest "* * * upon the grounds and for the reason the defendant was taken into custody as a result of an illegal arrest * * *." The motion did not elaborate on why the arrest was supposedly illegal. Following a brief evidentiary hearing, the district attorney argued there was "probable cause to make an arrest for loitering and for criminal trespass in the second degree." Defense counsel then argued that the loitering statute, ORS 166.045 (1)(a), was intended to only reach conduct "in sufficient proximity of the school or school grounds to threaten proper administration of school activities," and that when the statute was so interpreted there was no probable cause for defendant's arrest. This argument appears to be based on the arresting officer's testimony that he only saw defendant in the process of leaving the school grounds. Defense counsel also argued the misdemeanors involved were not committed in the officer's presence, hence the arrest was invalid. *See,* ORS 133.310. The constitutionality of ORS 166.045 (1)(a) was not mentioned during the arguments of counsel.

It was the trial court that first mentioned constitutional issues, discussing them at some length. The court then orally concluded:

"As far as I am concerned I strongly doubt the constitutionality of the statute and I would be real interested in looking at criminal trespass as long as we are here. (Pause)

"I specifically find that the defendant was unlawfully arrested both as to criminal trespass in

the second degree and as to the loitering; and the Motion to Suppress will be allowed."

On June 28, 1973 an order was filed that simply concluded:

"* * * [A]nd the Court being further advised,
"IT IS HEREBY ORDERED that the defendant's Motion to Suppress be and is hereby allowed."

The court's order did not state the reason the motion was allowed.

Defendant Imel moved to suppress the LSD seized after his arrest:

"* * * for the reason that said arrest was without authority, unlawful and in violation of Defendants [sic] constitutional rights:
"AND FOR THE FURTHER and separate reason that the search of the person of the Defendant * * * was unreasonable, unlawful and in violation of Defendant's constitutional rights."

Following a brief evidentiary hearing, defense counsel argued there was no evidence that established probable cause for the arrest. Defense counsel also argued that even assuming a valid arrest, the subsequent "strip" search was invalid by analogy to *State v. Gwinn*, 12 Or App 444, 506 P2d 187, Sup Ct *review denied* (1973). The constitutionality of ORS 166.045 (1)(a) was not mentioned during the arguments of counsel.

The trial court then orally ruled:

"I find, one, that there has been no evidence presented upon which there was any grounds for Officer Greenfield to stop and arrest, that the at least State statute, because we have not heard of a City ordinance, is unreasonably vague for the reasons amply set forth in the series of United States Supreme Court and of the Court of Appeals in State

v. White [sic—City of Portland v. White, 9 Or App 239, 495 P2d 778, Sup Ct *review denied* (1972)], and that the application in this case is unconstitutional.

"I have serious question as to the efficacy of strip searches in Class C Misdemeanors without any showing that gives opportunity for pre-trial release rather than incarceration has been offered, although I do not need to base this opinion or this ruling on that ground and specifically do not."

On August 3, 1973 an order was filed that simply concluded:

"* * * [A]nd the Court being further advised,
"IT IS HEREBY ORDERED that the defendant's motion to suppress be and hereby is allowed."

The court's order did not state the reason the motion was allowed.

I

Meaningful review of the trial court's decisions in these cases must begin with identifying the precise basis of those decisions. It is, however, impossible to discern the basis of the court's decisions from the records before us. Both defense attorneys filed "shotgun" motions to suppress. The motions contained only conclusory language—"illegal arrest," "violation of constitutional rights," etc. The motions failed to specify with any particularity exactly why the arrests or resulting searches were supposedly invalid. The arguments of counsel at the suppression hearings covered many issues; yet, perplexingly, the issue we are now asked to resolve—the constitutionality of ORS 166.045 (1)(a)—was never mentioned by counsel.

Nor do the trial court's orders explain the basis of the court's decision. Admittedly, we have the trial court's oral comments at the end of the two

suppression hearings. We are unable, however, to rely upon those comments. In *State v. Swain/Goldsmith,* 267 Or 527, 517 P2d 684 (1974), the Supreme Court stated:

"We must first determine what the district court decided. This is governed by the order which the district judge signed and not by any statement which he made at the conclusion of the hearing. A judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter * * *." 267 Or at 530.

In these cases, the final action, which took place when the trial court signed the orders disposing of these matters, failed to identify the basis of that action.[4]

■ In summary, given the absence of any specificity in the motions to suppress, and given the absence of any findings in the court's orders allowing the motions, we are unable to begin the process of reviewing those decisions.

## II

Oregon case law has long required that a written motion to suppress evidence be filed and decided before trial.[5] This long-standing rule has recently been codified.[6] Neither the case law nor the statute

---

[4] Moreover, even if we were able to consider the trial court's oral comments, we would still be faced with the problem of interpreting them. In addition to the statements quoted above, the trial court made many other remarks about various aspects of these cases. After reading all of these comments, reasonable men could differ in their interpretation of them.

[5] State v. Ramon, 248 Or 96, 432 P2d 507 (1967); State v. Haynes, 233 Or 292, 377 P2d 166 (1962).

[6] Oregon Laws 1973, ch 836, § 114, p 2734, provides:

"(1) Objections to use in evidence of things seized in vio-

defines the minimum specificity required in such motions.[9] However, illuminating analogies are available. First, a motion to suppress can be compared to a pleading. Second, a motion to suppress can be compared to an oral objection to the admissibility of evidence made during the course of a trial. Both analogies support a specificity requirement that is substantially greater than frequently followed in contemporary Oregon criminal practice.

## A

A motion to suppress is, in effect, a pleading to the extent that it frames the issues to be determined in a pretrial hearing on the motion. The fundamental role of a pleading is to give an opposing party notice of the pleader's position concerning the facts and law so that the opposing party can begin to prepare his defense. A pleading thus both defines and limits the areas of consideration at a trial or other evidentiary hearing. Furthermore, the pleading assists the court in the conduct of the trial, for example, by enabling the court to determine the relevance of offered evidence. *See, Ames v. Motor Vehicles Division,* 16 Or App 288, 517 P2d 1216 (1974).

Examination of the motions to suppress in these cases reveals how far bench and bar have strayed from

---

lation of any of the provisions of sections 81 to 119 of this Act shall be made by a motion to suppress which shall be heard and determined by the court in advance of trial.

"(2) A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

[9] But *cf.* State v. Wright, 266 Or 163, 511 P2d 1223 (1973), which requires specific affidavits accompany motions to suppress in certain circumstances.

the foregoing elementary principles. The *Johnson* motion simply alleges an "illegal arrest." The *Imel* motion is more verbose, but communicates nothing more. Neither motion effectively put the state on notice of the contentions it had to be prepared to meet at the hearings on the motions. Neither motion defined any specific issues to be determined by the court at the hearings on the motions.

■ We do not suggest that the analogy between a motion to suppress and a pleading is a perfect one. Nor do we intend that the measure of specificity used to test a pleading would be appropriate to also measure a motion to suppress. The principal difference, we believe, is that when motions to suppress are filed, defendants possibly are not and in some instances cannot be aware of all the facts. With this in mind, we conclude that a motion to suppress should be as reasonably specific as possible under the circumstances in order to give the state as much notice as possible of the contentions it must be prepared to meet at a suppression hearing. For example, as noted above, the arguments of counsel in *Johnson* indicate counsel's contentions were: (1) there was no probable cause to arrest; and (2) the misdemeanor arrest was invalid because any violation was not committed in the arresting officer's presence. If these were, in fact, the contentions advanced by the motion, then the motion could have and should have so stated.

### B

■ Most objections to the admissibility of evidence are, of course, made orally, during the course of a trial. Were it not for the existence of the motion-to-suppress procedure, objections on the grounds of illegal seizure of evidence would also have to be made

orally during the course of trial. But in part to avoid the disruption that objections of this type made in the course of trial might cause—since an evidentiary hearing is frequently necessary to determine illegal seizure questions—Oregon has adopted the pretrial motion-to-suppress procedure. The fact remains, however, that the essence of this motion is an objection to the admissibility of evidence.

Oral objections at trial must be accompanied by a reasonably definite statement of the grounds upon which they are made. *State v. Latta,* 246 Or 218, 425 P2d 186 (1967). "The purposes of the [specific objection] requirement are that the judge may understand the question raised and that the adversary may have an opportunity to remedy the defect, if possible." McCormick, Evidence 115, § 52 (hornbook series, 2d ed 1972). Examples of oral objections made during the course of trial that have been held not sufficiently definite are: "I object"; the evidence is "inadmissible"; or the evidence is "illegal." McCormick, supra at 116.

At least as much specificity should be required in a pretrial objection to the admissibility of evidence, i.e., a motion to suppress, as is required in an oral objection made during the course of a trial. In fact, even more specificity could reasonably be required because the pretrial objection can be researched and written under relatively calm circumstances, as distinguished from an extemporaneous objection made in the heat of trial. We merely point out, however, that broadly worded and vague objections are inappropriate in either context.

■ Just as a general objection made during a trial presents no basis for reversing a trial court's ruling, *State v. Latta,* supra, in the future a general objection

such as "illegal arrest" or "illegal search" made before trial will ordinarily present no basis for reversing a trial court's ruling.[®]

## III

Once the issues have been properly framed by a motion to suppress, they are determined in a pre-trial hearing with the court resolving any dispute concerning the facts. Almost 12 years ago the Oregon Supreme Court stated:

> "* * * The difficulty which arises [for appellate courts] in determining the facts in cases of this character could, for the most part, be eliminated if the trial judge would make findings of fact on all contested evidence underlying his ruling upon the reasonableness of a seizure in a given case." *State v. Chinn*, 231 Or 259, 263, n 1, 373 P2d 392 (1962).

The cases at bar convince us that this procedure must be required in certain cases.

To illustrate the problem, suppose defendants' motions to suppress had explicitly contended that: (1) the relevant loitering statute, ORS 166.045 (1)(a), is unconstitutionally vague; and (2) alternatively, even if the state statute is valid, there was no probable cause to believe defendants had violated it. The first contention is a legal one. The second contention generally is primarily a factual one. Suppose further that, as is the case here, the trial court had simply ruled that defendants' motions to suppress were granted. We would not know whether the trial court had passed on the legal contention only, the factual contention only, or on both contentions.

---

[®] Nothing in this opinion is intended to change the present rule that the state bears the burden of proving the validity of a warrantless search or seizure.

Knowing the basis of the trial court's decision in such a situation is essential in determining the scope of our review. Generally speaking, we review factual findings only to determine whether there is evidence to support them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). There is no such limitation on our review of a trial court's legal conclusions.

■ Therefore, in a case where a motion to suppress raises more than one contention—for example, alternative factual contentions, or alternative legal contentions, or alternative factual and legal contentions—and the trial court is persuaded to grant the motion on one or more of the grounds raised, then the trial court must state the basis of its decision.

■ In view of the Supreme Court's decision in *State v. Swain/Goldsmith,* supra, the better practice would be for the court to incorporate written findings in its final order. This may not, however, always be essential. If the trial court orally explained its reasoning during the suppression hearing, and continues to adhere to those views when signing the final order, then it would not be inappropriate for the final order to simply incorporate by reference those oral comments made on the record.

Detailed findings are not required. For example, in these cases, simply stating there was no probable cause to arrest defendants, or stating that the loitering statute is unconstitutionally vague would be sufficient. We do not imply by the examples that either would or would not be the proper result in these cases.

■ Nor are findings required in all cases. If a motion to suppress advances only one contention, then we can infer the trial court's factual or legal conclusions from its ultimate decision to grant or deny the

motion. If a motion to suppress advances several contentions, and the trial court denies the motion, then we can infer the trial court's factual or legal conclusions were all adverse to the contentions raised by the motion. Of course, always deciding a motion to suppress by way of written findings would be most helpful, and is to be encouraged. But findings are only essential in multi-issue cases in which the motion to suppress is granted.

These requirements do not impose unwarranted burdens on the criminal defense bar or on trial courts. They only result in applying to motion-to-suppress practice in the trial courts the same standards that lawyers and judges are accustomed to in other contexts—motions that define the issues to be determined by the trial court, and decisions by the trial courts that, when necessary, explain what, in fact, was decided.

Reversed and remanded for further proceedings, specifically, authorizing the defendants to file motions to suppress that comply with the requirements stated herein, new hearings on those motions and new trial court decisions that comply with the requirements stated herein.