Argued October 22, order vacated; remanded for further
proceedings November 10, 1975

STATE OF OREGON, *Appellant, v.* JERRY
WILLIAM HART, JR. (No. 75-0580) (No. 75-0492)
(CA 4766), *Respondent.*
541 P2d 1308

*Donald L. Paillette,* Assistant Attorney General,

Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Ellen F. Rosenblum,* Eugene, argued the cause for respondent. With her on the brief were Hammons, Phillips & Jensen and Michael V. Phillips, Eugene.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

The defendant is charged with criminal conspiracy to furnish a narcotic drug, ORS 161.450 and 167.207, and illegal sale of narcotics, ORS 167.207. The indictments grew out of the same incident and after the indictments were consolidated for trial defendant moved to suppress "any and all evidence seized as a result of the search" which led to defendant's arrest. The motion for suppression was based upon the allegation that the officers' entry into defendant's apartment was unlawful. The motion was granted and the state appeals.

The arresting officers testified that an undercover officer had made arrangements for the purchase of cocaine for $1,100 from defendant and one Timmy Smith at the defendant's apartment. The undercover officer was in the apartment at approximately 2 a.m. on January 24, 1975 making the purchase. He had upon him a device for transmitting what was said in the apartment to officers who were waiting outside. The officers outside the apartment testified that by prearrangement, when the sale was consummated and something was said about using some of the cocaine, they knocked and loudly announced they were police officers, that they heard scurrying about inside the apartment but no one answered the door and that they

forced the door. All of the action was related as having occurred on one floor. No stairway was mentioned as having been traversed by anyone. They apprehended the defendant in the bathroom of the apartment and Timmy Smith dove out a bedroom window. Smith apparently had the $1,100, the serial numbers of which had been recorded, for as he descended through the air from the window of the apartment his fall was broken by an intervening tree and the $1,100 in recorded money floated down about him. The officers waiting outside apprehended him and gathered up the money. One officer testified the apartment was in "a two-story * * * multi-family unit dwelling. It's an apartment complex." One other officer described it as a two-floor apartment building. One witness testified Smith's dive was from the fourth floor bedroom window of defendant's apartment.

The defendant and another occupant of the defendant's apartment (the only witnesses called by defendant) testified that they heard no knock or the announcement from the police officers, that the first inkling of entry was when the door was broken down. A police officer who was stationed outside and across the street said he could hear from where he was the officers' command to open the door. All four of the police officers who testified said the knock and warning were given. Arguments presented by respective counsel revolved around the questions of whether there was adequate warning given and of whether the circumstances were sufficient to justify the invasion of the apartment. But the trial judge questioned whether the officers who were waiting outside while the transaction was being accomplished were trespassers. When the court inquired on this subject, that is, where the officers were when they heard the completion of the transaction, the district attorney answered:

"I don't know that that was fully developed.

*They overheard it down below first and went up.*
They heard some conversation through the window,
I believe. They heard voices, anyway. And they
also heard it on this transmitter. Maybe the Court
would want to hear more about that. But I guess
I didn't feel that was an issue in this case. So I
didn't really develop that aspect of the matter
fully. As fully as the Court obviously would want
it developed. I was solely concerned with the an-
nouncement aspect." (Emphasis supplied.)

The emphasized portion of the above quotation is not
supported by the record—from other statements made
by the prosecutor, it is obvious that this is what he
wanted to develop with further evidence. Defense
counsel conceded that the motion and affidavit sup-
porting it were "somewhat limited" to the "knock and
announce" theory. The court declined to hear any
more evidence, saying that "* * * I don't believe it
would be fair after I've indicated a ruling * * *." The
ground the court stated for sustaining the motion was
"that the officers were trespassing upon the front
porch and overheard what occurred in the house be-
fore they entered."

In the entire transcript there is nothing we can
find that gives us any idea of the true nature of the
area where the officers were listening. At one point
the defendant indicated that a window from the apart-
ment looked out to a porch "[a]nd the porch only goes
so far. It doesn't even go on to the window." In other
places in the testimony reference is made by other
witnesses to a porch. We cannot visualize how the
porch on the second floor, or the fourth floor if that
is where it is (if there is a fourth floor), is in the
access area of an apartment in a multi-family unit
apartment complex, the size of which is not known
to the record. In his brief defendant says, "* * * It
is clear from the record that the entry way, in ques-

tion, served a single apartment * * *." He does not cite us to anything in the transcript to support this statement, and we cannot find any evidence in the record to support it.

The trial judge made no ruling upon the question presented by the adversaries, namely, whether the officers made an illegal entry by reason of failure to knock and announce. Therefore, there is nothing for us to rule upon in that regard.

■ We find it impossible from the evidence received to determine whether the ground upon which the trial court did rule was valid. We know from the testimony that the officers were outside the door of defendant's apartment and that they were listening to what was going on inside. Maybe they were in a street below the apartment and heard enough on their transmitters to justify going up to a porch where the apartment door was. We do not know whether the area outside the door was one from which one or more apartment doors opened. The expectation of privacy in a case like this depends upon the facts and we simply do not find enough facts in the record for a ruling. The state offered to produce more evidence but was not afforded an opportunity to do so. The motion and affidavit supporting it did not apprise the state that defendant would rely on expectation of privacy in the access area; indeed, the defense obviously had not even considered that as a basis for its motion until the judge brought the subject up. *See State v. Johnson/ Imel,* 16 Or App 560, 519 P2d 1053, Sup Ct *review denied* (1974). We conclude that the matter must be returned to the trial court for additional proceedings.

■ The state has contended before us that the recorded money, being outside the building when it was recovered, was not in any event subject to being suppressed, and that defendant could not assert a reason-

able expectation of privacy to the outside area to which the money floated. However, if the entry was illegal the money only got to where it was as a result of that illegality. *See* comments in *State v. Corbett,* 15 Or App 470, 473-75, 516 P2d 487 (1973), Sup Ct *review denied* (1974). Nothing in the record tells whether further contraband was recovered inside the apartment.

The order from which the appeal is taken is vacated. Remanded for further proceedings.