Argued and submitted April 23, reversed
and remanded for trial September 29, 1982

STATE OF OREGON,
*Appellant,*

*v.*

JOHN PAUL WYMAN,
*Respondent.*

(No. 81-355 C, CA A22933)

651 P2d 195

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Robert E. Barton, Assistant Attorney General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Warden, and Young, Judges.

YOUNG, J.

## YOUNG, J.

The state appeals, pursuant to ORS 138.060(3), from a pretrial order suppressing certain evidence that was held to be the product of an unreasonable search and seizure.[1] We reverse.

On September 16, 1981, Klamath Falls police officers were dispatched to defendant's home to investigate a report of a domestic disturbance. When the officers arrived, defendant's girlfriend, Ms. Godsby, was there, but not defendant. The officers learned that Ms. Godsby had been living at the house but had recently moved out. After a few minutes, defendant arrived at the house. The officers explained their presence and asked defendant's permission to enter the house to check for possible damage and to "make sure everything was all right." Defendant agreed, and he escorted the officers on a tour of the house. The officers noted some interior damage and broken windows and then left the house with defendant.

Ms. Godsby, who apparently had been waiting outside, said she wanted to go in the house and get her property. An officer explained to defendant that, because this was a civil dispute, defendant could deny her request. Defendant agreed that she could enter the house to remove her belongings, except for a clock. Ms. Godsby went into the house, and defendant got in his car and prepared to leave. An officer then told defendant that the police were also obliged to leave if defendant left and that, if that should happen, no one would know what Ms. Godsby took from the house. Defendant then told the officer that Ms. Godsby could take anything she wanted, including the clock. The officer then asked defendant to "stand by" until the officer could relay the message to Ms. Godsby and inform her that defendant and the police were going to leave. The officer did not ask defendant's permission to reenter the house to speak to Ms. Godsby, nor did defendant object to his reentry.[2]

---

[1] Defendant was indicted for the manufacture of a controlled substance. ORS 475.992.

[2] The officer testified:

"A. I asked him to stand by until I recontacted her and told her to go ahead and take whatever she wanted.

Once inside the house, the officer called to Ms. Godsby. She answered, "I'm back here. Come here. I want to show you something." The officer testified that he assumed Ms. Godsby's belongings had been damaged. When the officer entered a bedroom, Ms. Godsby opened a closet door, revealing three marijuana plants, one of which was dead. The officer then asked defendant to come into the house. Once inside, defendant admitted that the plants were his. The officer asked if there were other drugs in the house, and defendant showed the officer a pressed marijuana leaf, which he intended to laminate. Defendant was then arrested and advised of his *Miranda* rights.

Defendant moved to suppress the three plants and the leaf on the ground that the search was without a warrant and without other lawful justification. He argued that the officer did not have consent to search and that Ms. Godsby did not have joint authority over the premises lawfully to consent to a search. The trial court, when it granted the motion to suppress, concluded:

> "The only exception apparent from the facts presented is that the State contends that the officer had consent. The Court finds that the defendant himself did not consent *to the search*, nor manifest any intention to surrender his expectation of privacy *concerning entry in the closed closet* of the bedroom of his house." (Emphasis added.)

If the state's only theory was that defendant consented *to a search*, we would agree that the state failed to meet its burden. The most that defendant could have consented to was the officer's reentry into the house for the purpose of communicating with Ms. Godsby. Because the scope of the consent defines the scope of the intrusion, a consent merely to reenter does not include a consent to search. *See State v. Chipley,* 29 Or App 691, 564 P2d 1096, *rev den* 279 Or 301 (1977) (consent to a search for airport security purposes permitted no greater intrusion). We also

---

"Q. Okay. And did he make any objection to your re-entering the house at that time?

"A. No, he didn't. He remained in his car.

"Q. Did you ask him, specifically, if you could go back in the house?

"A. No, I didn't."

agree that Ms. Godsby did not have joint authority over the premises. However, the case does not turn on whether defendant consented to a search; it depends on whether he consented to the officer's reentry. The facts set out above establish, as a matter of law, that defendant gave his consent to the officer's reentry. *See State v. Smith,* 51 or App 223, 625 P2d 1321, *rev den* 291 Or 118 (1981); *State v. Ragsdale,* 34 Or App 549, 579 P2d 286, *rev den* 283 Or 503 (1978); *State v. Radford,* 30 Or App 807, 568 P2d 692 (1977).

■    Ms. Godsby's intrusion into defendant's closet and her disclosure of the plants were private acts beyond the purview of the Fourth Amendment. The exclusionary rule does not apply to warrantless searches by private individuals. *Burdeau v. McDowell,* 256 US 465, 41 S Ct 574, 65 L Ed 1048 (1921); *State v. Waterbury,* 50 Or App 115, 622 P2d 330, *rev den* 290 Or 651 (1981). Although defendant's expectation of privacy was violated, the intrusive conduct was by Ms. Godsby, not by the police.

■    The officer's seizure of the marijuana plants was justified because they were in "plain view." The discovery by the officer was inadvertent. He was at the house because of a reported disturbance and not on a mission to discover contraband. The plants were in the plain view of the officer where he was entitled to be and were subject to seizure. *See Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *State v. Keller,* 265 Or 622, 510 P2d 568 (1973); *State v. Frink,* 42 Or App 171, 600 P2d 456 (1979).

Finally, we are asked to resolve the status of the suppressed marijuana leaf. Defendant's motion to suppress did not raise a *Miranda* issue, although at the conclusion of the suppression hearing he argued that the discovery of the leaf was the product of custodial interrogation "without the benefit of * * * *Miranda* rights." It appears that the trial court and the state were unaware of defendant's claim until argument. The order suppressed the plant and the leaf because of the lack of consent, and it did not address the *Miranda* question. That issue remains for resolution by the trial court. *See State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, *rev den* (1974).

Reversed and remanded for trial.