Argued and submitted October 8, 1982, affirmed in part, reversed in part and remanded March 2, reconsideration denied April 14, petition for review allowed May 31, 1983 (295 Or 122)

See 295 Or 524, 668 P2d 1197 (1983)

# CITY OF PORTLAND,
*Appellant - Cross-Respondent,*

*v.*

# TUTTLE,
*Respondent - Cross-Appellant.*

(217706-8108; CA A24555)

659 P2d 1010

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Richard L. Lonergan, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant was charged with violation of Portland City Code § 14.08.140, interfering with a police officer. Her actions that gave rise to the charge occurred when police officers entered defendant's home without a warrant in pursuit of her son. The City of Portland appeals from a pretrial order suppressing evidence obtained by the officers after entry.[1] The question presented by the City is: "May a police officer who has probable cause to believe a fleeing driver has committed careless driving, pursue the driver into private premises in order to effect an arrest?"[2] Defendant cross-appeals, arguing that her demurrer to the charging instrument should have been sustained or, in the alternative, that she is entitled to trial by jury. We reverse the order to suppress and otherwise affirm the trial court's rulings.

On August 1, 1981, a police officer responded to a radio report of a fight at a Portland intersection. At the scene, three or four people reported that a car had been speeding in the area and that an altercation had occurred between the occupant of the car and two other persons. While the officer was there, a gold Mustang appeared, and one of the bystanders pointed to it and said, "That's the car, that's the guy." The car matched a description that the officer had been given over the radio. It approached, tires squealing, abruptly stopped, backed up, changed direction and loudly accelerated in the opposite direction with more squealing of tires. The officer testified that the car was driven in a "reckless" manner. He followed it and saw it enter a driveway.

The officer testified that upon arriving at defendant's house, he saw the driver—later identified as John Mongeon—get out of his car in the driveway. The officer got out of his car and yelled for Mongeon to stop. Mongeon

---

[1] The appeal is pursuant to ORS 46.047 and 138.060.

[2] As the state's brief points out in a footnote, this court has held that neither the state nor the federal Constitutions requires suppression of evidence of a crime committed against a police officer after the officer has unlawfully entered a home. *State v. Burger,* 55 Or App 712, 639 P2d 706 (1982); *see State v. Gaffney,* 36 Or App 105, 583 P2d 582 (1978), *rev den* 285 Or 195 (1979). However, this argument was not presented in the trial court.

then ran down the driveway and around the corner of the house. The officer heard a door open and close and concluded that Mongeon had entered the house. Mongeon, on the other hand, testified that there were no police present when he drove into the driveway or during the time he walked from the car to the house. He said he did not see any police until 10 to 15 minutes after he entered the house.

The trial court made findings of fact as follows:

"1) Ms. Tuttle is the mother of John Mongeon and was a resident of the home and was at home when the police entered on August 1, 1981.

"2) The officer entered the home without a warrant and the burden of justifying the entry is on the State.

"3) *Without deciding the issues of fact raised by conflicting accounts of the witnesses,* the officer had probable cause to cite, *at most,* for careless driving, a Class B traffic infraction committed in his presence.

"4) The officer was never endangered or threatened by John Mongeon.

"5) *At most,* Mongeon fled after parking his car in his driveway, disregarding the officer's command to stop.

"6) The officer immediately entered the house without knocking or in any way attempting to gain permission to enter the home.

"7) At the time of the entry, the officer knew the name of the registered owner of the vehicle and knew that the owner lived at that very address and had seen the driver sufficiently well to identify him in court, on the record.

"8) The officer searched the dwelling for two to four minutes until he found Mongeon. During this time, Tuttle was following the officers from room-to-room yelling at them to get out of her house." (Emphasis supplied.)

Careless driving is a Class B traffic infraction. ORS 487.235. At the times pertinent to this case, ORS 484.100 provided that police could arrest for traffic offenses, including infractions.[3] There is no constitutional impediment to such action. In *United States v. Santana,* 427 US 38, 96 S Ct 2406, 49 L Ed 2d 300 (1976), the Supreme

---

[3] This statute was amended by Or Laws 1981, ch 818, § 15 to provide that officers may arrest for traffic *crimes* only.

Court held that, when police approached the defendant while she was standing in her doorway, the defendant's retreat into her house did not prevent officers from completing the arrest. The Court stated:

"We thus conclude that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *[United States v. Watson*, 423 US 411, 96 S Ct 820, 46 L Ed 2d 598 (1976)], by the expedient of escaping to a private place. * * *." 427 US at 43.

*See State v. Niedermeyer*, 48 Or App 665, 617 P2d 911, *rev den* 290 Or 249 (1980), *cert den* 450 US 1042 (1981); *State v. Wesson*, 40 Or App 99, 594 P2d 429 (1979).

■　It follows from the foregoing that, if the facts were as recited by the police officers, the entry into defendant's home to complete the arrest of Mongeon was permissible. However, if the facts as stated by Mongeon are believed, there was no initiation of an arrest by police in a public place and, as far as we can see, no exigent circumstances to justify a warrantless entry into defendant's home. The trial court explicitly refrained from resolving the factual dispute upon which this controversy turns. The case must be remanded for the trial court to resolve that factual conflict. *See State v. Johnson/Imel*, 16 Or App 560, 519 P2d 1053, *rev den* (1974).

■　In her cross-appeal, defendant argues that the trial court erred in overruling her demurrer and in denying her request for a jury trial. Defendant demurred on the ground that the complaint "does not state facts sufficient to constitute a crime." She contends that the offense charged under the Portland City Code is a crime because it carries a potential penalty of imprisonment and that, because it is a crime, the City was required to, but did not, plead a culpable mental state.

ORS 135.630(4) provides as one of the grounds for demurrer to an accusatory instrument "That the facts stated do not constitute an offense * * *." In *State v. Eyerly*, 37 Or App 399, 587 P2d 1039 (1978), we held that an accusatory instrument is not subject to demurrer for failure to plead a culpable mental state if the facts alleged do

"constitute an offense" as defined in ORS 161.505,[4] but that a defendant could not be given a sentence of confinement if the accusatory instrument alleged only a violation. *See State v. Emmich,* 39 Or App 769, 593 P2d 1281 (1979). The prosecutor in this case stipulated that defendant was charged only with a violation and not with a crime, and the trial court included that stipulation in its order on demurrer. There was no error in overruling defendant's demurrer.

■ ■ As to defendant's right to a jury trial, an accused has a right to a jury trial under the United States Constitution only if the offense carries a potential sentence of at least six months imprisonment. *Duncan v. Louisiana,* 391 US 145, 88 S Ct 1444, 20 L Ed 2d 491 (1968); *Baldwin v. New York,* 399 US 66, 90 S Ct 1886, 26 L Ed 2d 437 (1970). Because defendant was charged only with a violation and could not be sentenced to imprisonment, the federal Constitution does not require that she be given a jury trial.

We conclude that under *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), defendant is not entitled to a jury trial under Oregon Constitution, Article I, Section 11. She is charged with a violation, not a crime. The maximum penalty is a $250 fine.[5] ORS 161.565 provides:

> "* * * Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."

The consequences of conviction of this violation are so minor that the jury trial provisions of Article I, Section 11 are not implicated. *See Brown v. Multnomah County Dist. Ct., supra.*

---

[4] ORS 161.505 provides:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime or a violation or an infraction."

[5] Portland City Code Section 14.08.020 provides that the maximum penalty for violation of the ordinance is a $500 fine and/or six months imprisonment. However, it also provides that "* * * no greater penalty shall be imposed than the penalty prescribed by Oregon statute for the same act or omission." ORS 161.635 provides that the maximum penalty for a violation is a fine of $250.

Neither is defendant entitled to a jury trial under Oregon Constituion Article I, Section 17, which provides: "In all civil cases the right of Trial by Jury shall remain inviolate." As the court stated in *Behnke v. Jordan*, 275 or 199, 203, 550 P2d 736 (1976):

"A defendant is entitled to a jury trial only in those types of cases in which the right existed at the time of the adoption of our constitution. At the time of the adoption of the Oregon Constitution 'petty and trivial offenses, where penalties were light, and where a speedy and inexpensive mode of procedure was necessary, were triable without a jury.' * * *"

If, as defendant suggests, the charge against her might be considered to be a civil matter, the statement from *Behnke* applies to this situation. The court did not err in denying defendant a jury trial.

The trial court's order suppressing evidence is reversed and remanded for further proceedings in light of this opinion; the court's order overruling defendant's demurrer and denying defendant a jury trial is affirmed.