Argued and submitted October 24, 1983, resubmitted In Banc March 6, affirmed in part, reversed in part and remanded August 21, reconsideration denied October 11, petition for review allowed November 26, 1985 (300 Or 332)

STATE OF OREGON,
*Appellant,*

*v.*

JERALD C. HERBERT,
*Respondent.*

(29153; CA A28263)

705 P2d 220

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

NEWMAN, J.

Gillette, J., concurring.

Van Hoomissen, J., concurring in part; dissenting in part.

Buttler, J., specially concurring in part; dissenting in part.

## NEWMAN, J.

Defendant was indicted for possession of a controlled substance. ORS 475.992(4). The state appeals a pretrial order that granted defendant's motion to suppress property seized from defendant just after his arrest. ORS 138.060(3). We affirm in part and reverse in part.

Two officers of the St. Helens Police Department saw defendant in a store parking lot. Officer Yokum knew that there was an outstanding warrant for defendant's arrest for failure to appear on a charge of driving while suspended. Yokum approached defendant and arrested him. Defendant told Yokum that he wanted to get some identification from the truck in which he had come to the store. The truck belonged to a friend. Defendant walked to the passenger side of the truck, got into the truck and sat down in the passenger seat. Yokum stood nearby. The friend stood on the other side of the truck. Defendant reached into the bib pocket of his overalls, pulled out a fold of paper and put it on the shelf underneath the glove compartment. The "paperfold" was opaque and measured one inch by one-half inch. Its edges were folded in. Yokum took it from the shelf and asked defendant, "What is this?" Defendant answered, "What is what?" Yokum showed it to defendant, but he did not respond. Yokum seized the paperfold. The officers then took defendant to jail. The second officer testified that, after defendant was jailed, the officer opened the paperfold at the police station and made a "field test" of its contents. That test revealed "the presence of cocaine." The police then sent the paperfold for analysis to the State Police crime laboratory, which identified its contents as cocaine.

Yokum did not know defendant to be a drug user or dealer and, when he arrested him for failure to appear, he did not suspect that defendant was carrying contraband. Yokum testified, however, that he had seized the paperfold because he believed that it contained cocaine, that he had received training at the police academy in recognizing cocaine and its packaging, that he had seen similar paperfolds two or three times, that on each occasion they had contained cocaine and that they are commonly used to store cocaine. Yokum testified that, from his experience, he knew that persons who have just been arrested will sometimes attempt to get rid of contraband in their possession. Yokum thought that defendant was trying

to distract him with one hand when he put the paperfold on the shelf with his other hand and that he appeared to feign ignorance when the officer asked him about it.

The court made the following findings of fact:

"1. The officer had the normal training received by police officers for the detection of and identification of controlled substances.

"2. The paper fold was distinguishable from ordinary paper only by its folded shape, not by the kind of quality of paper that it was.

"3. The paper was opaque.

"4. The defendant was neither a known user or trafficker in the illicit business of controlled substances.

"5. Defendant was being arrested on a nonrelated, i.e., not related to the drug charge, traffic matter.

"6. The defendant removed the paper fold from his bib overalls front pocket in the presence of the officer and in a manner that seemed to be furtive to the officer.

"7. The officer was suspicious that the paper fold contained cocaine."

The court stated:

"In this case, before me, there is no bottle through which the contents can be seen, nor is there any suspicion of the presence of a controlled substance.

"It was possible that the paper fold might contain cocaine. The officer had seen it before in a paper fold and had been taught to suspect that cocaine was transported in that manner. A possibility is not enough. * * * The paper fold could have just as possibly held small, unsnelled fishhooks, pieces of a calculator which had been disassembled and were being taken to a repairman, a broken necklace or a chain that girls wear that was being taken to the jeweler, or a number of other things, such as radish seeds.

"In *State v. Alpert* * * * cocaine in a bank envelope was suppressed as well as cocaine in a ladies compact. It seems to me that if the container is not transparent/translucent, or of such an odd nature (balloon with contents in shirt pocket), or a pliable container which lends itself to palpable discernment, there will have to be more circumstances present than those here to support probable cause to seize."

The court suppressed the paperfold and its contents and all

information or knowledge gained either directly or indirectly from the seizure.

■     A seizure and a search are separate constitutional events. We must consider the seizure of the paperfold separately from the subsequent searches of its contents. In its appeal, the state confined its brief to the issue of seizure of the paperfold. Moreover, the state did not contend below or on appeal that there was probable cause to arrest defendant for possession of a controlled substance or that the officer seized the paperfold or searched it incident to such an arrest. Because in this state's appeal it did not preserve these arguments, we do not consider them. *See State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975). The state only argues that there was probable cause to seize the paperfold and that the seizure was lawful, because the police were lawfully present, defendant voluntarily exposed the paperfold in the car and the police believed that it contained contraband.

■ ■     The seizure of the paperfold was lawful. Probable cause to support a warrantless seizure under Article I, section 9, requires more than a suspicion, no matter how well warranted. It requires a reasonable belief that the paperfold contained contraband. *See State v. Anspach,* 298 Or 375, 380, 692 P2d 602 (1984). Although we are bound by the trial court's finding of historical facts, *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), we are not bound by its constitutional conclusions. Yokum's experience and training, the shape of the paperfold, defendant's arrest and imminent incarceration, his return to his friend's truck and failure to get the identification he had told Yokum he sought, his furtive gestures, his evasive responses to Yokum's question about the paperfold and his placement of the paperfold in the truck gave Yokum probable cause, under Article I, section 9, to believe that the paperfold contained contraband.[1] Moreover, defendant had exposed the paperfold to plain view when he placed it on the shelf under the glove compartment, and Yokum was lawfully present when he saw and seized the paperfold. We hold that the

---

[1] The combination of circumstances here is different from that in *State v. Alpert,* 52 Or App 815, 629 P2d 878 (1981), where we ruled that the warrantless seizure of a compact and a bank envelope was not valid. The defendant there was not under arrest, there was nothing about the compact or bank envelope to suggest that either object contained contraband and the officer's experience was "not impressive." 52 Or App at 819.

seizure of the paperfold was valid under Article I, section 9. *State v. Johnson,* 232 Or 118, 374 P2d 481 (1982); *see also State v. Elkins,* 245 Or 279, 283, 422 P2d 250 (1966).[2] The seizure was also valid for the same reasons under the Fourth Amendment. *Washington v. Chrisman,* 455 US 1, 102 S Ct 812, 70 L Ed 2d 778 (1982).

We must consider, however, the validity of the subsequent opening of the paperfold and the testing of its contents. As noted, the state did not assert that the police seized or searched the paperfold incident to an arrest of defendant for possession of a controlled substance, and we do not consider that position in this state's appeal.[3] Moreover, the *seizure* of the paperfold was of an object *not* related to defendant's arrest for failure to appear. Accordingly, this case falls squarely under *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), where the police seized an amber pill bottle that was *not* related to the reason for the defendant's arrest for driving under the influence of intoxicants, and the subsequent search of the pill bottle was not incident to that arrest.[4] The court examined the validity of the opening of the pill bottle and the testing of its contents.

In *Lowry* the defendant's automobile was stopped for

---

[2] In *Elkins* the court noted a similar justification for a warrantless seizure but held that there was *not probable cause to seize* the material as contraband and the evidence should, therefore, have been suppressed. 245 Or at 288, 294.

[3] Accordingly, we express no opinion about whether the police had probable cause to arrest defendant for possession of a controlled substance, that is, "a substantial objective basis for believing that more likely than not" defendant had committed that crime. *See* ORS 131.005(11); ORS 133.310. If we were to analyze the warrantless searches here as incident to an arrest of defendant for possession of a controlled substance, we would examine the searches at the police station and crime laboratory to determine if they were reasonable under all the circumstances, including in time, place and intensity, *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), and whether events had reached a "logical stopping point" so that a warrant was required for further search. *State v. Waggoner,* 73 Or App 325, 698 P2d 525 (1985); *see also State v. Chinn,* 231 Or 259, 373 P2d 392 (1962).

[4] By contrast, in *State v. Caraher, supra,* the seizure *was* related to the offense for which the police arrested the defendant. As the court stated in *Lowry:*

"Here the pill bottle was seized in the course of arresting defendant for a crime with which the bottle had nothing to do. This is the decisive distinction between this case and *Caraher,* which sustained the warrantless seizure of evidence from Caraher's purse because 'the arrest was for possession of a controlled substance [and] it was reasonable to believe that defendant would carry contraband in her purse.' 293 Or at 759." 295 Or at 347.

a faulty headlight, a traffic infraction. The defendant was subsequently arrested for driving under the influence of intoxicants. After the arrest and while the defendant was handcuffed, an officer, without a warrant, seized from his person a small, transparent amber pill bottle containing a white powder, which the police later tested without a warrant and found to be cocaine. *Lowry* expressly omits the seizure as a basis for suppression, 295 Or at 349, and accepts that, because the pill bottle could be seized for a limited time to determine by "tests" if its contents were contraband, its seizure was lawful. *Lowry* states that "testing is a form of search," 295 Or at 345, and held that the evidence should have been suppressed, because the lawful seizure of the pill bottle did not justify the subsequent warrantless opening of the bottle and the testing of its contents.

The court stated that "effects" that are

> *"unrelated* to the reason for the arrest may be seized if their nature as contraband is evident on sight or, if this determination requires tests of an unknown substance or opening of a closed container, to secure them for the least amount of time needed to obtain a warrant for this purpose upon a showing of probable cause that *further search* is justified. *Because that was not done in this case,* the search of the pill bottle and testing of its contents went beyond what is permissible without a warrant, and *the motion to suppress should have been allowed."* 295 Or at 348. (Emphasis supplied.)

Here, the seizure of the paperfold was unrelated to the reasons for defendant's arrest, and the police needed to conduct tests of its contents to determine if they were contraband. The seizure of the paperfold and the subsequent opening of it and the testing of its contents at the police station and at the crime laboratory "are properly analyzed not as one but as [separate] events." 295 Or at 346. As *Lowry* states:

> "The question is not simply whether probable cause to investigate, that is to say, to 'search,' the contents of the [container] did or did not exist, but whether there was any need to do so without a warrant." 295 Or at 346.

The question here is not simply whether, after seizure of the paperfold, there was probable cause to search its contents, but whether there was any need to do so without a

warrant.[5] There was none. After Yokum lawfully seized the paperfold, there was no practical necessity or exigent circumstance to justify the warrantless searches of its contents. The state does not argue that there was. The police retained possession of the paperfold. They had time to obtain a warrant to search its contents. The warrantless searches violated defendant's rights under Article I, section 9.[6] Evidence of the contents of the paperfold should have been suppressed.[7]

Affirmed as to suppression of the evidence of the paperfold's contents; reversed as to suppression of the paperfold; and remanded for trial.

**GILLETTE, J.,** concurring.

I join in the opinion of the court. I wish to add two additional points:

1. The lead opinion is at pains to point out that, on this state's appeal, the state is limited to the theories it advanced in the trial court. That is correct. *State v. Hickmann,*

---

[5]
"It seems never to become superfluous to repeat that the requirement of a judicial warrant for a search or seizure is the rule and that authority to act on an officer's own assessment of probable cause without a warrant is justified only by one or another exception. *State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983); *State v. Carsey,* 295 Or 32, 38, 664 P2d 1085 (1983); *State v. Greene,* 285 Or 337, 340-41, 591 P2d 1362 (1979); *State v. Miller,* 269 Or at 328, 334, 524 P2d 1399 (1974). The time to make the judicial determination whether there is probable cause for a search or a seizure, if time permits, is before the individual's privacy is invaded. A later adjudication upon a motion to suppress evidence, although necessary, does not undo the invasion, does not help persons who are cleared and never prosecuted, and colors the perception of 'probable cause' by what the search in fact revealed. *See State v. Greene, supra,* 285 Or 351-55 (concurring opinion). The reasons for the exceptions from the rule are always one form or another of practical necessity to act before a warrant can be obtained." *State v. Lowry, supra,* 295 Or at 346.

[6] We need not address defendant's Fourth Amendment claim respecting the searches. *See State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983).

[7] Judge Gillette's concurrence suggests that, if the court knows that more of "the suspect material"—here, the contents of the paperfold—remains in the state's possession, the court "can affirm" a conviction. The state, however, may not use knowledge that it obtains from an illegal opening and testing to supply probable cause for a later warrant to open and test. Moreover, nothing in this opinion provides any basis for a suggestion that the state, after an illegal search, could re-test the contents of a container without a warrant or that, if the defendant had been tried and the court had admitted the results of that illegal search, the error would have been "harmless." Indeed, we can surmise that the result of such a trial would have been different if the evidence had been suppressed.

273 Or 358, 540 P2d 1046 (1975). Because of that limitation on our analysis, we are not called upon to indicate how—if at all—our formulation of the doctrine of "progressive probable cause" in *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984), might have an impact on a similar factual situation, had that theory been urged below. As I noted in concurring in *State v. Brody,* 69 Or App 469, 474, 686 P2d 451 (1984):

> "It is probably regrettable that the posture of these cases as they reach us—some as defendant's appeals, some as the state's—has such an impact: the very same set of facts can produce two antithetical appellate opinions, at least when viewed solely in terms of the result. Before attempting to rely on *any* appellate decision in the search and seizure area, therefore, counsel should always check to see who was appealing. The answer may significantly limit the sweep of otherwise broad language." (Emphasis in original).

2. While I agree with the majority that the result and certain of the language in *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), lead us to the result we reach in this case, I am not altogether sanguine about utilizing that case as an analytical tool. My reservations about it are fully set forth in this court's opinion in *State v. Flores, supra,* 68 Or App at 632-636 (and in the dissent here of Van Hoomissen, J.) and need not be repeated. I simply wish to note that, having disposed of the case as we do here, not all issues are resolved.

The biggest remaining issue is: Is the case over? Put differently: Can the state still, in some way or other, establish the identity of the contents of the paper fold? We are not required to decide that question at this time, but it is a very real one, and I wish to state my own view.

If the police have rightfully seized what they believe to be contraband, they are going to hold it whether or not criminal charges ensue, because no one has a right, constitutional or otherwise, to possess contraband. *Whether tested or not,* police retention of material like that taken from defendant in this case is absolutely, unassailably reasonable. Therefore, although we hold that the testing of the material without a warrant in this case violated the Oregon Constitution, it may avail defendant nothing. The police may still have more of the material; a warrant can be obtained, and the remaining

material can be tested. There can be no doubt that the outcome of a second test would be the same as the first. If there remains any of the material, the error in not obtaining the first warrant would be, therefore, harmless beyond a reasonable doubt.

Of course, we cannot know in every case that there remains some of the suspect material to test. We do not know that here. When we know, we can affirm. When we do not, we must remand and the state may then, if it has any excess material, seek a warrant. (In fact, after this opinion, I should think that the state would routinely do so when a motion to suppress is filed.)

I recognize that this view at least impliedly calls into question one sentence from *Lowry, viz:*

"Other 'effects' unrelated to the reason for the [particular] arrest may be seized if their nature as contraband is evident on sight *or, if this determination requires tests of an unknown substance or opening of a closed container, to secure them for the least amount of time needed to obtain a warrant for this purpose upon a showing of probable cause that [a] further search is justified.*" 295 Or at 348. (Emphasis supplied.)

I follow *Lowry* because it is what I am required, as a judge of an intermediate appellate court, to do. That includes an obligation to try to rationalize those things which the opinion may not have adequately explained. *See State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985).

However, I have not the foggiest idea what the court could conceivably have meant by the foregoing statement from *Lowry.* Judge Buttler, in his separate opinion, finds a theory, which I can only label "the right to a speedy search," in it. Unlike the effort—successful, I think—to find a rationale for some portions of *Lowry, see, generally, State v. Westlund, supra,* I can find none for this idea, at least as to contraband to which no one except the police has a possessory right.[1]

---

[1]*See also State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985) (slip opinion at 15, n 10). I repeat here what I said there:

"If we [as a majority of this court] have erred in our effort to give form and substance to *State v. Lowry,* the Supreme Court needs to see that there is a crying need to say so."

With these reservations—which are rather significant—I concur.

**VAN HOOMISSEN, J.,** concurring in part; dissenting in part.

The only question the trial judge addressed in this case was whether the *seizure* of the paperfold was lawful. The judge concluded that it was not. Accordingly, he allowed defendant's motion to suppress. I agree with the majority that the trial judge erred in that respect. The majority should have stopped there.

The judge was not asked to address, and he did not consider, whether the subsequent opening of the paperfold and the testing of its contents were lawful. Therefore, the majority is premature in addressing those issues. They should not be addressed by this court before they have been raised in the trial court and, if raised, ruled on by the trial judge. *See City of Portland v. Tuttle,* 62 Or App 62, 659 P2d 1010 (1983); *State v. Wyman,* 59 Or App 542, 651 P2d 195 (1982); *State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, *rev den* on *Imel* (1974). I would reverse the trial judge's erroneous ruling and remand this case for trial.

On the merits, the state appeals from an order granting defendant's motion to suppress. ORS 138.060(3). The majority holds that the seizure of the paperfold was lawful, because Officer Yokum had probable cause to believe that the paperfold contained contraband. I agree. I read the majority opinion to hold that the seizure was independently lawful under the "plain view" exception to the warrant requirement. Again, I agree.

The majority also holds that the police needed a warrant to "search" the paperfold.[1] For the reasons given in my dissenting opinion in *State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985), I disagree and therefore respectfully dissent.

---

[1]It is not clear to me whether this "search" involves (1) the opening of the closed paperfold, (2) the testing of the paperfold's contents or (3) both of the above. The Supreme Court should tell us whether opening and testing constitute one or two discrete constitutional events. *See State v. Lowry,* 295 Or 337, 346, 667 P2d 996 (1983).

Warden, J. and Rossman, J. concur in this concurrence and dissent.

**BUTTLER, J.,** specially concurring in part; dissenting in part.

I agree with the trial judge that the officer did not have probable cause to seize the "paperfold"; he had a reasonable suspicion that it contained contraband, nothing more. Accordingly, I would affirm the suppression order and, therefore, dissent from the majority opinion to that extent.

Although I agree with much of the majority's analysis of *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), I write separately, because I believe *Lowry* would permit the police to take possession of the paperfold on something less than probable cause and to detain it for a reasonable time in order to obtain a warrant.

I recognize that one may focus on specific language in *Lowry* to support different interpretations. My focus is on this language:

> "In this case there is substantial dispute whether the officer himself reasonably believed the pill bottle to contain a controlled substance. When an officer in fact has reasonable cause for such a belief, he often will also face the practical need to retain the bottle or other container long enough for a magistrate to decide whether there is probable cause to seize and to test the unknown contents, unless the owner consents to an immediate test in order to recover his property. The exception from the warrant requirement extends to depriving the owner of possession as long as necessary to safeguard it and to obtain a speedy judicial decision. But unless the substance is volatile the practical need to proceed without a warrant normally extends no further." 295 Or at 347.

Taking that language in the context of the court's overall discussion of the problem presented, I understand the court to have suggested that an officer, with less than probable cause, may deprive the owner of possession of property for a long enough period to safeguard it and to obtain a magistrate's determination of whether there is probable cause to seize and search it. If the magistrate determines that there is not, the property must be returned.

That analysis is analogous to *Terry v. Ohio,* 392 US 1,

88 S Ct 1868, 20 L Ed 2d 889 (1968), and ORS 131.615, permitting police to stop a person on reasonable suspicion that he has committed a crime and to make reasonable inquiry concerning the immediate circumstances that aroused the suspicion. It seems to me that "seizing" a person, without probable cause, for a reasonable time is substantially more intrusive than is the temporary detention of property to assure its availability in the event a warrant is issued. *See United States v. Place,* 462 US 696, 103 S Ct 2637, 77 L Ed 2d 110 (1983). Both rules attempt to accommodate the interest of the police in investigating and preventing crime and that of a person's right to be secure in his person, house, papers and effects. Or Const Art I, § 9.

Given my understanding of the thrust of *Lowry* on this point, two probable cause showings are not necessary, as *State v. Flores,* 68 Or App 617, 685 P2d 999 (1984), suggests. In this case, the police did not follow the prescribed procedure by seeking a warrant after taking possession of the paperfold. It may be that they could not have made a sufficient showing of probable cause to support the issuance of a warrant by a magistrate. That, I think, is one of the points in *Lowry.*