**UNITED STATES of America, Appellee,**

**v.**

**Robert Bennett SCHWARTZ, Appellant.**

**No. 733, Docket 75–1364.**

United States Court of Appeals,
Second Circuit.

Submitted Feb. 18, 1976.

Decided April 20, 1976.

Robert Bennett Schwartz, pro se.

Peter R. Schlam, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Richard Appleby, Zachary W. Carter, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On this appeal from a judgment of the United States District Court for the Eastern District of New York convicting appellant of conspiracy to traffic in narcotics in violation of 21 U.S.C. §§ 173, 174, appellant does not challenge the sufficiency of the evidence against him. Finding no basis for appellant's numerous claims of procedural error, we affirm.

The proof may be succinctly summarized. During 1970, Luis Ureta-Morales, known also as Lucho, was importing cocaine from South America and selling it in New York City. Among his customers was Claudina Leiros who, in turn, was selling to appellant's wife. On May 9, 1970, two of Lucho's couriers were arrested and detained in Los Angeles, and Lucho sought legal advice. Leiros introduced Lucho to appellant, a lawyer then under a three year suspension from practice.

This introduction permitted appellant to explore with Lucho the possibility of eliminating Leiros as the middleman and purchasing directly from Lucho. After some negotiations, Lucho told appellant that a large shipment of cocaine would shortly be imported through Texas and that appellant could have ten or fifteen kilograms from it.

Shortly thereafter Lucho met Juan Besolo, another drug trafficker, who had five kilograms of cocaine available for ready sale, and arranged for this to be sold to appellant. During the course of this transaction, Besolo stated that after payment was made he would have ten more kilograms to sell, and Lucho arranged for this also to be purchased by appellant.

Before this transaction was consummated, Lucho flew to Texas to pick up the shipment he was awaiting. There he was arrested. The cocaine, however, was not found. When Lucho, having made bail, returned to New York, he found that Besolo, frightened off by Lucho's arrest, had reneged on the ten kilogram deal. Lucho promised appellant once more that he would receive a portion of the unseized Texas shipment when it arrived in New York but was again arrested before this could take place.

Although both Mr. and Mrs. Schwartz were indicted on December 10, 1974, Mrs. Schwartz fled the country shortly after pretrial hearings had commenced in March 1975. Judge Judd directed, nonetheless, that the trial proceed against both defendants, and both were convicted.

On December 26, 1974, following appellant's arrest, Special Agent John P. Cipriano of the Drug Enforcement Administration applied to a United States magistrate for warrants authorizing the search of several safe deposit boxes rented by Mr. and Mrs. Schwartz. Five such warrants were issued authorizing the seizure of "large quantities of United States currency". One of the boxes was found to contain $75,000 in cash, jewelry, a deed to property in Jamaica purchased for $210,000, money wrappers and documents evidencing other large financial holdings by appellant and his wife, all of which were seized. Only the cash, money wrappers and the deed were subsequently offered in evidence.

Prior to trial, defendants moved to suppress the evidence thus seized, asserting that certain statements in the warrant application relative to the "laundering" of the proceeds of narcotics sales were untrue and that the application improperly disclosed information concerning appellant's failure to file income tax returns which he had given the United States Attorney upon the assurance it would not be used against him.

The affidavit stated that police officers had seen defendants go to a bank on several occasions and convert cash into bills of large denomination, cashier's checks or money orders and then drive to the banks where defendants' safe deposit boxes were located. In this manner, it was said, narcotics dealers laundered the proceeds of their sales. Judge Judd found that the hearsay affidavit of an investigator who had interviewed employees of the bank did not disprove that laundering had taken place. He also found that there was enough information contained in the application to justify the issuance of a warrant,

and he, therefore, deemed it unnecessary to resolve the question of a breach of confidence.

On appeal, appellant has broadened his attack. He now states that Agent Cipriano lied when he stated in his affidavit that his "investigation" revealed that defendants had not filed tax returns since 1968, because this "investigation" consisted solely of a conversation with the Assistant United States Attorney in charge of the case. Appellant also argues that the information contained in the affidavit was stale and did not establish probable cause as of the time the warrants were issued. Finally, appellant contends that the seizure of the deed and other items in the safe deposit box went beyond the scope of the warrant and violated his Fifth Amendment privilege against self-incrimination. These contentions are without substance.

█ We find no error in Judge Judd's rulings on the motion to suppress, and appellant does not seriously contend that there was error. Instead, he has shifted his position and now advances arguments not made below. The Government very properly points out that the failure to assert a particular ground in a pre-trial suppression motion operates as a waiver of the right to challenge the subsequent admission of evidence on that ground. *United States v. Rollins,* 522 F.2d 160, 165 (2d Cir. 1975); *United States v. Sultan,* 463 F.2d 1066, 1070 (2d Cir. 1972). Moving past this point, however, we see no knowing falsehood in Cipriano's failure to state that the product of his investigation was information supplied to him by an Assistant United States Attorney, who, it would seem, could be considered a fairly reliable source. Statements contained in Cipriano's affidavit concerning the recent laundering activities of Mrs. Schwartz and her attempt to secure access to her safe deposit box on December 16, 1974, for the apparent purpose of securing $25,000 needed for bail, could reasonably lead the magistrate to conclude that cash from narcotics sales was in the box. Because the box was sealed and remained sealed until the warrant was executed, this information could not in any way be considered stale. *Mapp v. Warden,* 531 F.2d 1167, 1171–1172 (2d Cir. 1976). Seizure of the deed and money wrappers was clearly justified under the "plain view" doctrine. *Id.* at 1172; *Rollins, supra,* 522 F.2d at 166. Finally, the fact that appellant might not have been required to produce the contents of the safe deposit box pursuant to trial subpoena does not cloak them with a Fifth Amendment privilege prohibiting seizure under a validly issued search warrant. *United States v. Bennett,* 409 F.2d 888, 896–97 (2d Cir.), *cert. denied,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969).

█ Appellant also challenges the validity of a wiretap order, the same order, incidentally, which was unsuccessfully attacked in *United States v. Fantuzzi,* 463 F.2d 683 (2d Cir. 1972). This order, issued by Judge Wyatt of the Southern District of New York on May 23, 1970, authorized a fifteen day wiretap on the telephone of one Carmen Lopez in whose apartment, according to a reliable informant, Lucho and other drug dealers had been meeting to discuss the importation of cocaine and from which drug-related telephone calls were made. The wiretap affidavit disclosed that the informant, Carmen Estrada, was not in a position to supply the police with extensive information concerning the obviously far-flung drug conspiracy, since she had not been taken into the confidence of the conspirators. Moreover, according to the affidavit, Estrada had stated that she would refuse to testify as a witness in the event of trial. We think that Judge Wyatt, viewing this affidavit in a practical and common-sense fashion, could reasonably conclude that investigative procedures other than wiretapping would be unlikely to succeed. *United States v. Steinberg,* 525 F.2d 1126 (2d Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 2167, 48 L.Ed.2d 794, 44 U.S.L.W. 3659 (1976); *United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, 1015–16, *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). Although Estrada subsequently overcame her fear of reprisal and did testify, this did not change the picture

as it was when Judge Wyatt granted the application. At that time, the Bureau of Narcotics' source of information was a frightened informant who was not privy to the inner workings of the conspiracy.

■ Relying on the Supreme Court's interpretation of 18 U.S.C. § 2518(1) in *United States v. Kahn,* 415 U.S. 143, 155, 94 S.Ct. 977, 984, 39 L.Ed.2d 225, 236–37 (1974), appellant argues that he should have been named in the wiretap application, because the Narcotics Bureau had probable cause to believe that he was committing the offense for which the wiretap was sought. We have followed the holding in *Kahn,* while at the same time recognizing the problems it presents for law enforcement officials. *See United States v. Principie,* 531 F.2d 1132, 1137 (2d Cir. 1976).

We need not concern ourselves with these problems in this case, however, because the record does not establish that, at the time the wiretap application was made, the Narcotics Bureau had probable cause to believe that appellant was involved in the offense under investigation, *i. e.,* the large-scale importation of narcotics. Appellant did not even see fit to urge this ground in his motion to suppress. On the contrary, he contended that it was the wiretap which led the Government to begin an investigation of him and that all the evidence upon which the Government based its case against him was uncovered as a result of the tap. Although the Bureau did have some information that appellant and his wife were dealing in drugs, more than this was required to establish their probable involvement in a large-scale conspiracy to import drugs. At the time the wiretap application was made, the Narcotics Bureau was investigating a "criminal syndicate" with its "base of operation" at the apartment sought to be tapped. Any pre-tap information which might conceivably have connected appellant to this "syndicate" and its importation conspiracy was too insubstantial to establish the "probable cause" required by *Kahn.*

■ Appellant participated in but two of the wiretapped conversations. In one of these, the other participant was a conspirator named in the wiretap order; in the other the participant was the informant Estrada. Both of these conversations had to do with the posting of bail for arrested conspirators. Assuming that appellant had standing to assert failure to minimize the quantity of conversations intercepted on the phone of Carmen Lopez, *but see United States v. Poeta,* 455 F.2d 117, 122 (2d Cir. 1971), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972), we see no error in Judge Judd's conclusion that the extent of non-pertinent matters intercepted was slight. It is virtually impossible to completely exclude all irrelevant matter from intercepted conversations. *United States v. Bynum,* 485 F.2d 490, 500 (2d Cir. 1973), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974), *aff'd on remand,* 513 F.2d 533 (2d Cir. 1975).[1]

■ After the termination of the wiretap, an inventory of those whose conversations were overheard was furnished to Judge Wyatt. Appellant's name was included. Because his name had not been included in the wiretap application or order, it was for Judge Wyatt to determine in his discretion whether a copy of this inventory should be served upon appellant. 18 U.S.C. § 2518(8)(d). We see no abuse of discretion in Judge Wyatt's determination that such service was not required.

■ Appellant's complaint that he was denied due process by delay in his indictment is without merit. The case against him depended substantially upon the testimony of Lucho, and it was not until May 1974 that Lucho agreed to cooperate with the Government. We see no "contrived procrastination" by the Government to the prejudice of appellant. *United States v. Eucker,* 532 F.2d 249, 255 (2d Cir. 1976).

■ Venue in the Eastern District of New York was predicated in part upon tes-

---

1. We note also that the minimization issue was not raised prior to trial as required by 18 U.S.C. § 2518(10).

timony before the grand jury that cocaine had been delivered by ship to Brooklyn, and this was alleged as an overt act in the indictment. For lack of proof, this overt act was withdrawn from the jury's consideration. There was no error here. *United States v. Wilner,* 523 F.2d 68, 72 (2d Cir. 1975). Other trial testimony was sufficient to support the chosen venue, and the Government was not restricted to the overt acts charged in the indictment in justifying its choice. *United States v. Downing,* 51 F.2d 1030, 1031 (2d Cir. 1931).

 Appellant's remaining arguments merit only summary mention. The Government's proof adequately established the existence of a single conspiracy. *United States v. Tramunti,* 513 F.2d 1087, 1105–07 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673, 244 U.S.L.W. 3201 (1975). Adverse rulings, standing alone, do not establish judicial bias or prejudice, *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481, 484–85 (1921), nor create a reasonable question of judicial impartiality. *Lazofsky v. Somserset Bus Co.,* 389 F.Supp. 1041, 1044 (E.D.N.Y.1975). The evidence showing unusual accumulations of cash and assets in appellant's safe deposit box was properly admitted. *Tramunti, supra,* 513 F.2d at 1105; *United States v. Kenny,* 462 F.2d 1205, 1219 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972). Proof of appellant's suspension from practice became relevant and admissible after he had attempted to create the impression that his relationship with the other conspirators was that of lawyer and client. There was no error in permitting the trial to proceed after the flight of Mrs. Schwartz. *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); and proof of such flight, with proper limiting instructions as to appellant, was probative evidence of the guilt of the missing defendant. *United States v. Lobo,* 516 F.2d 883 (2d Cir.), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56, 44 U.S.L.W. 3202 (1975). Although it would have been better had there been no mention in the charge of misprision of felony, we think that, at most, this was harmless error which may be disregarded in view of the overwhelming evidence of guilt. *United States v. Cirillo,* 499 F.2d 872, 889 (2d Cir. 1974), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1975).

Appellant, a lawyer apparently not yet disbarred, has explored every conceivable ground for reversal, and we have reviewed each of his contentions. Having done so, we are satisfied that appellant received a scrupulously fair trial and that his conviction should be upheld.

Affirmed.