The STATE of Utah, Plaintiff and Respondent,

v.

Tommy Lynn CARTER, Defendant and Appellant.

No. 19522.

Supreme Court of Utah.

Sept. 27, 1985.

**658**

Nancy Bergeson, Curt Nesset, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant was convicted on two counts of vehicle burglary and two counts of theft, one a third degree felony for theft of a camera, and one a class B misdemeanor for theft of a purse. We affirm the convictions, except for the third degree felony theft conviction, which must be reduced to a misdemeanor.

On February 5, 1983, at approximately 9:30 p.m., Officer Roger Winkler of the Salt Lake City police department was informed by radio of a vehicle burglary at Third East and Third South in downtown Salt Lake City. The burglary suspect was described as a black male with a blue backpack. At approximately 10:00 p.m., Officer Winkler observed the defendant, Tommy Lynn Carter, walking in a downtown alley approximately one block away from the burglary. Officer Winkler decided that the defendant matched the broadcast description.

Winkler stopped the defendant, asked his name, and frisked him. Winkler found a screwdriver and a flashlight in defendant's front pocket. Winkler informed the defendant that he was under arrest for carrying a concealed weapon and for loitering. The officer then removed the defendant's backpack and placed it on the hood of his police car.

By this time a backup officer, James Alcock, had arrived. The defendant was placed in the back of Alcock's patrol car and belted in. The officers opened the defendant's backpack and found a camera and a purse, which later proved to be stolen.

Prior to trial, the defendant filed a motion to suppress all evidence seized in violation of the Fourth Amendment. At the suppression hearing, defendant's counsel argued that the search of the defendant's backpack was illegal because (1) there were no "articulable facts" upon which the police officer could validly frisk the defendant,

*see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and because (2) there was no probable cause to arrest. On that basis, defense counsel moved to suppress the contents of the backpack, and the motion was denied.

At trial, a Mr. McGlothlin testified for the State that his car was burglarized and that shortly afterwards he saw the defendant walk by his car. The defendant moved for a mistrial because the prosecutor failed to inform defendant's counsel before trial that McGlothlin was an eyewitness. The court denied the motion.

A third degree felony requires proof of theft of an item having a value in excess of $250.00. *See* U.C.A., 1953, § 76–6–412(b)(i). The camera that was stolen in Salt Lake City was purchased by McGlothlin in Price, Utah. The defendant introduced the testimony of a Salt Lake camera dealer that the value was only $177.00. The prosecution introduced testimony of a camera dealer from Price that the value of the camera was about $490.00. The jury was instructed to value the camera at the time and place where the crime occurred.

On appeal, the defendant argues that the trial court violated the Fourth Amendment to the United States Constitution by failing to suppress the contents of the backpack because (1) the frisk was unlawful and (2) the warrantless search of the backpack was unlawful. In addition, the defendant argues (3) that the trial court erred by failing to grant his motion for a mistrial since the State failed to inform him that an eyewitness was able to connect him to the scene of the crime, and (4) that the evidence is insufficient to support his conviction.

## I.

The defendant contends that the police had no reason to frisk him and that all evidence produced from that illegal action should have been suppressed. The defend-

ant concedes that the officer's investigatory stop was valid.

■ Both the defendant and the State rely on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Supreme Court established a narrowly drawn exception to the Fourth Amendment requirement that police obtain a warrant for all searches. Where a police officer validly stops an individual for investigatory or other purposes and reasonably believes that the individual may be armed and dangerous, the officer may conduct a "frisk" or "pat-down" search of the individual to discover weapons that might be used against him. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883. *See also Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *State v. Cole,* Utah, 674 P.2d 119 (1983); *State v. Rocha,* Utah, 600 P.2d 543 (1979); *State v. Lopes,* Utah, 552 P.2d 120 (1976).

■ The reasonableness of a frisk for weapons is judged by an objective standard.[1] It is not essential that an officer actually have been in fear. *See United States v. Tharpe,* 536 F.2d 1098, 1101 (5th Cir.1976). Since no one factor is determinative of reasonableness, a trial judge must determine the reasonableness of a frisk in light of all the facts. *See State v. Houser,* Utah, 669 P.2d 437, 439 (1983). There must, however, be some reasonable basis for both stopping and frisking; the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1879. A mere unparticularized suspicion or hunch is not sufficient.

---

**1.** In assessing the reasonableness of the search, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio,* 392 U.S. at 21–22, 88 S.Ct. at 1879–1880.

*Id.* at 27, 88 S.Ct. at 1883; *State v. Swanigan,* Utah, 699 P.2d 718, 719 (1985).

■ A number of courts have held, and we agree, that a police officer may lawfully frisk a burglary suspect. "It is reasonable for an officer to believe that a burglar may be armed with weapons, or tools such as knives and screwdrivers which could be used as weapons, and that a pat-down search is necessary for the officer's safety." *People v. Myles,* 50 Cal.App.3d 423, 430, 123 Cal.Rptr. 348, 352 (1975). "It is not unlikely that a person engaged in stealing another person's property would arm himself against the possibility that another person will appear unexpectedly and object strenuously." *People v. McGowan,* 69 Ill.2d 73, 12 Ill.Dec. 733, 736, 370 N.E.2d 537, 540 (1977). *See also United States v. Stevens,* 509 F.2d 683 (8th Cir.1975); *People v. Martineau,* 185 Colo. 194, 523 P.2d 126 (1974); *State v. Flynn,* 92 Wis.2d 427, 285 N.W.2d 710 (1979); 3 W. LaFave, *Search & Seizure Law* § 9.4 at 116 & n. 28 (1978).

■ In this case, Officer Winkler relied on the following facts to justify the frisk: 1) the defendant matched the radio dispatch describing the burglary suspect as a black male with a blue backpack; 2) Officer Winkler encountered the defendant within about one-half hour of the radio dispatch and less than a block away from the burglary scene; 3) the defendant had a large bulge in his front pocket; 4) the previous evening, Officer Winkler had arrested a female who told him that a Tommy Carter had given her stolen credit cards that he had gotten in the downtown Salt Lake area. She described Carter as having greasy hair and crooked front teeth. When Officer Winkler first stopped the defendant, the officer observed that the defendant's hair and front teeth matched the description, and the defendant identified himself as Tommy Carter; 5) the officer and the defendant were in a dark alley. On these facts, Officer Winkler, when he encountered the defendant, had some reason to believe that the defendant had committed a burglary and might be armed.

## II.

The defendant also contends that the warrantless search of his backpack was unlawful because it was removed from the defendant's person and was in the officer's immediate control when the officers searched it. On the authority of *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the defendant argues that such a search is not valid as a search incident to a lawful arrest. *See also State v. Cole,* Utah, 674 P.2d 119 (1983); *State v. Griffin,* Utah, 626 P.2d 478 (1981); *State v. White,* Utah, 577 P.2d 552 (1978); *but see State v. Houser,* Utah, 669 P.2d 437 (1983).

■ However, where a defendant fails to assert a particular ground for suppressing unlawfully obtained evidence in the trial court, an appellate court will not consider that ground on appeal. *State v. Lee,* Utah, 633 P.2d 48, 53 (1981); *United States v. Hensel,* 699 F.2d 18 (1st Cir.1983); *United States v. Schwartz,* 535 F.2d 160 (2d Cir. 1976); *United States v. Rollins,* 522 F.2d 160 (2d Cir.1975); *State v. Kremer,* 307 Minn. 309, 239 N.W.2d 476 (1976); *Writt v. State,* Tex.Crim., 541 S.W.2d 424 (1976); 3 W. LaFave, *Search & Seizure Law* § 11.-2(a) at 496 (1978). "[T]he failure to assert a particular ground in a pre-trial suppression motion operates as a waiver of the right to challenge the subsequent admission of evidence on that ground." *United States v. Schwartz,* 535 F.2d at 163.

In *State v. Lee,* Utah, 633 P.2d 48 (1981), the defendant argued in the suppression hearing that the initial viewing of stolen goods in a truck was an unlawful search. On appeal, the defendant made the additional argument that regardless of the lawfulness of the search, the seizure was by itself unlawful. We declined to address the unlawful seizure argument. We stated: "Generally, there is no justification for not presenting all available grounds in support of a motion to suppress, and in the absence of special circumstances, an appel-

late court will not rule on grounds not addressed in the trial court." *Id.* at 53. We pointed out that motions to suppress should be supported by precise averments, not conclusory allegations,[2] and concluded:

There is nothing in the record to indicate that the point now urged upon this Court was unavailable or unknown to defendant at the time he filed his motion to suppress, and to entertain the point now would be to sanction the practice of withholding positions that should properly be presented to the trial court but which may be withheld for the purpose of seeking a reversal on appeal and a new trial or dismissal.

*Id.*

In this case, the defendant could have presented his argument at the suppression hearing that the search of his backpack was unlawful, but did not do so. His only position was that since the stop and frisk were illegal, the fruits of the frisk should have been suppressed. Defendant never did contend that the police required a warrant to search the backpack irrespective of the lawfulness of the stop and frisk issue. Failure to raise the point precludes its consideration here.

### III.

The defendant argues that the trial court erred by failing to grant his motion for a mistrial for failure to disclose material evidence. Before trial, defense counsel submitted a request for discovery pursuant to U.C.A., 1953, § 77–35–16(a). The information requested included "a list of witnesses the State intends to call [and] any recordings or reports about statements made by the witnesses." In response, the prosecutor allowed defense counsel to look through his case file.

One of the witnesses called by the prosecution at trial was Mr. McGlothlin, the bur-

glary victim whose camera was stolen from his car in the Trolley Square parking lot. McGlothlin testified that he had seen the defendant walk by the parking lot a few minutes after McGlothlin had discovered the burglary of his car. McGlothlin first realized that he had seen the defendant at that time when he saw the defendant at the preliminary hearing. McGlothlin reminded the prosecuting attorney of that fact the morning of the trial. The prosecuting attorney did not inform defense counsel of this fact. Defendant argues that the prosecution's failure to inform the defense counsel of this evidence violated § 77–35–16(a) and his right to due process.

Section 77–35–16(a) states:

Except as otherwise provided, the prosecutor shall disclose to the defense upon request the following material or information of which he has knowledge:

(1) Relevant written or recorded statements of the defendant or co-defendants;

(2) The criminal record of the defendant;

(3) Physical evidence seized from the defendant or co-defendant;

(4) Evidence known to the prosecutor that tends to negate the guilt of the accused, mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment; and

(5) Any other item of evidence which the court determines on good cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense.

■ On its face, this statute does not require the prosecutor to disclose all unrequested information about prosecution witnesses. *See State v. Fierst,* Utah, 692 P.2d 751, 752 (1984). Subsection (a)(5) requires the prosecutor to disclose, on order of the court, any other information "for the defendant to adequately prepare his de-

---

**2.** As stated in *State v. Johnson,* 16 Or.App. 560, 519 P.2d 1053 (1974):

At least as much specificity should be required in a pretrial objection to the admissibility of evidence, i.e., a motion to suppress, as is required in an oral objection made during the course of a trial. In fact, even more

specificity could reasonably be required because *the pretrial objection can be researched and written under relatively calm circumstances, as distinguished from an extemporaneous objection made in the heat of trial.* (*Id.* 519 P.2d at 1057–58.)

fense." Here the prosecutor supplied all the information in his possession that was initially requested, including a list of the prosecution's witnesses and recordings and reports of their statements to the police.

■ In addition to the statutory discovery requirements, due process requires a prosecutor to disclose even unrequested information which is or may be exculpatory. *State v. Jarrell,* Utah, 608 P.2d 218, 224 (1980). The defendant argues for a broader rule, and relies on language from *Jarrell.* As we have several times noted, a criminal proceeding is more than an adversarial contest between two competing sides. It is a search for truth upon which a just judgment may be predicated. Procedural rules are designed to promote that objective, not frustrate it. When a request or an order for discovery is made pursuant to § 77–35–16(a), a prosecutor must comply. To meet basic standards of fairness and to ensure that a trial is a real quest for truth and not simply a contest between the parties to win, a defendant's request for information which has been voluntarily complied with, or a court order of discovery must be deemed to be a continuing request. And even though there is no court-ordered disclosure, a prosecutor's failure to disclose newly discovered inculpatory information which falls with the ambit of § 77–35–16(a), after the prosecution has made a voluntary disclosure of evidence might so mislead defendant as to cause prejudicial error.

■ However, this is not such a case. McGlothlin was not an eyewitness to the vehicle burglary; his testimony only placed the defendant near the burglary scene after the burglary was committed and, in any event, other substantial evidence tied the defendant to the burglaries. Accordingly, the trial judge's denial of the motion for mistrial was proper.

## IV.

The defendant's final argument is that the evidence is insufficient to support his conviction of third degree theft for stealing McGlothlin's camera and accessories. Third degree theft requires that the amount stolen exceed $250.00. U.C.A., 1953, § 76–6–412(b)(i).

The defendant introduced the expert testimony of Mr. Steven Schmidt, a Salt Lake dealer in used cameras, that the stolen camera equipment was worth $177.00. The prosecution introduced expert testimony of a camera dealer from Price, Utah, that the camera equipment was worth $490.00.

■ Where stolen property is not destroyed but is recovered, it is valued at its fair market value at the time and place where the alleged crime was committed. *State v. Logan,* Utah, 563 P.2d 811, 813 (1977). *See also State v. Kimbel,* Utah, 620 P.2d 515, 518–19 (1980); *State v. Gorlick,* Utah, 605 P.2d 761 (1979). *Compare* U.C.A., 1953, § 76–6–101(4)(a) (value of destroyed property). Of course, the word "place" is not self-defining. To prove market value in a different city, the cities must be sufficiently close geographically and similar in population to be considered the same place for purposes of valuing the property.

In this case, the only relevant testimony concerning the value of the camera equipment in Salt Lake City was from the defendant's expert. The prosecution witness testified that he worked exclusively in Price, Utah, and was familiar only with camera values in Price. Price is a rural community that is much smaller than Salt Lake City and is over one hundred miles distant.

■ The value of the used camera equipment was not a fact within the common knowledge of the jury. Since the only evidence of the value of the camera equipment at the place it was stolen was the testimony of Mr. Schmidt, the only value supported by the evidence was the figure he gave, $177.00. Cross examination of Mr. Schmidt disclosed no factual basis for a higher estimate. The State cites no case, and we have been unable to find any ourselves, which allows a jury to disregard expert testimony as to the fair market value of stolen property and fix a higher value when there is no basis in the evidence

properly before the court to justify that value. Of course, a jury is free to disregard expert testimony in whole or in part, *but see State v. Boyd,* Utah, 692 P.2d 769 (1984), and it may also discount the value of property estimated by an expert. In this case, however, the issue is not the right to disregard an expert's testimony, but whether there was any admissible evidence to support a finding that the value of the camera exceeded $250.00. There was none.

The case is remanded for entry of a judgment of conviction in compliance with this opinion.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.