STATE of Utah, Plaintiff and Appellee,

v.

Janel PETERSON, Defendant and Appellant.

No. 900485–CA.

Court of Appeals of Utah.

Oct. 23, 1992.

Randall T. Gaither, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Marian Decker, Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and RUSSON, JJ.

## OPINION

GARFF, Judge:

Janel Peterson appeals a conviction of distribution of or arranging to distribute controlled substances in violation of Utah Code Ann. § 58–37–8 (1990). Court-ordered interceptions of Peterson's telephone conversations pursuant to Utah Code Ann. § 77–23a–1 (1990) ("Interception of Communications Act" or "Act") provided nearly all the evidence supporting her conviction. We affirm.

## FACTS

Pursuant to the Act, Utah County Attorney Steven B. Killpack authorized Deputy County Attorney James R. Taylor to supervise and apply for a court order authorizing a wiretap of a telephone number issued in the name of Peterson's five year-old daughter. The court approved the application and issued an ex parte wiretap order. The order identified Peterson as living with Ross Gallegos, the targeted suspect, but did not specifically name Peterson as a targeted suspect. The order, did however, specify that an authorized objective of the wiretap was

> to determine the identities of persons as yet unknown who may be involved in criminal tran[s]actions dealing in narcotics, marijuana or dangerous drugs with Ross Gallegos. The objective shall include determining, for those persons who shall be determined, the dates, times, methods, procedures and other details of illegal transactions.

The order provided that interception "shall continue until enough evidence is obtained to accomplish the objectives herein stated, but in no event shall the authorization ... extend longer than thirty (30) days past March 21, 1989, unless a specific extension is granted." The order required officers to personally monitor all interceptions, and to terminate monitoring "upon discovery that the conversation is not relevant to the provisions of this order."

Pursuant to the order, officers intercepted, tape recorded, and transcribed some of Peterson's telephone conversations. Officers minimized conversations not within the scope of the order by terminating monitoring whenever the conversation appeared not relevant to the scope of the order. Officers resumed listening for short periods of time to determine whether the conversation had shifted to relevant matters.

Some of the first complete conversations between Gallegos and Peterson contained relevant discussions. The officers then began targeting Peterson's conversations, continuing to minimize whenever the conversation veered from the scope of the order.

Officers filed progress reports once a week, identifying individuals, in addition to those named in the original order, who appeared involved in the distribution of controlled substances. The first of five progress reports identified Peterson by name as someone whose conversations concerned controlled substances. The progress report also noted that "on several occasions Ross Gallegos and Janel Peterson have been followed to meetings with other individuals who have been heard discussing or arranging deals involving controlled substances of one kind or another."

In reviewing these reports, the court found on March 28, 1989, that "the conversations expected to be overheard were intercepted, that all conversations were recorded, that minimization is continuing and that the authorized interceptions have not achieved their purpose and the objective has not been accomplished as of this date."

During intercepted call 215, Peterson conversed with a person named Melodee.

Peterson told Melodee she would ask Gallegos whether he could obtain some "white" for her. At trial, the State proffered that Officers Orndorff and West would testify that, used in this context, "white" could refer to cocaine. Peterson did not object to this proffer, and the court accepted it.

Based on evidence received during the interceptions, Peterson was charged with several counts of distribution or arranging to distribute controlled substances in violation of section 58-37-8.

Peterson moved to suppress this evidence and to dismiss the charges. In a hearing on the motion, the court directed that tapes of the intercepted conversations be played in open court and that Peterson be allowed to move to correct and amend the transcriptions. While the court sustained most of Peterson's motions to correct and amend, it ultimately denied her motion to suppress, making extensive findings of fact.

After a hearing on the charges, the court found Peterson guilty of one count of distribution of or arranging to distribute a controlled substance (cocaine), and seven counts of distribution of or arranging to distribute a controlled substance (marijuana).

Peterson appeals her conviction claiming the court erred in (1) refusing to adopt a strict compliance standard for the Interception of Communications Act; (2) failing to make adequate findings supporting its order denying suppression; (3) refusing to confine the Utah Act to the limitations of the federal act; (4) issuing an inadequate wiretap order; (5) failing to find the officers had not complied with the wiretap order; (6) convicting Peterson on insufficient evidence; and (7) unconstitutionally applying section 58-37-8.

STANDARD OF COMPLIANCE

Peterson urges this court to follow the example of Oregon, which, in *State v. Pottle*, 296 Or. 274, 677 P.2d 1, 8 (1984), required a strict compliance standard for its version of the Interception of Communications Act. Curiously, Peterson argues that

strict compliance should come into play by authorizing only the Utah Attorney General to apply for wiretap orders.

■ The Act provides that the attorney general, an assistant attorney general, a county attorney, or a deputy county attorney "may authorize an application" for a court-ordered wiretap. Utah Code Ann. § 77–23a–8(1). Because the statute specifically provides for a deputy county attorney to apply for a wiretap order, and because our judicial role is to interpret existing law and not to rewrite it, Peterson's argument is misplaced and without merit. We find no error in the court's conclusion that the deputy county attorney was duly authorized to apply for the wiretap order. We need not reach the broader issue of strict compliance because, in all relevant aspects, the wiretap order is more restrictive than what the statute allows.[1]

### ADEQUACY OF FINDINGS

■ Peterson claims the court committed reversible error when it denied her motion to suppress without making findings addressing each of her objections.

The court's findings of fact in both its authorization order and in its order denying Peterson's motion to suppress adequately support its conclusion that the ex parte application complied with the Act. Specifically, the court found that (1) the Act authorized the deputy county attorney to apply for a wiretap order, (2) early conversations between Gallegos and Peterson established probable cause to intercept Peterson's conversations, (3) the minimization procedures used complied with the order and with the Act, and (4) all interceptions

of Peterson's conversations complied with the order.

While the court's findings did not specifically address each of Peterson's objections, the findings adequately support the court's denial of Peterson's motion to suppress.

### ADEQUACY OF WIRETAP ORDER

Peterson claims the court erred in issuing the wiretap order because it (1) failed to state sufficient guidelines for minimization, (2) failed to require periodic reports concerning minimization, and (3) allowed for nonofficer employees to intercept calls.

The grounds for a claim of error "must be specifically and distinctly stated" via a contemporaneous objection or some other form of specific preservation of claims of error appearing on the record. *State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989); *accord State v. Johnson*, 774 P.2d 1141, 1144–45 (Utah 1989). Thus we need not consider allegations of error not preserved for our review. *Johnson*, 774 P.2d at 1145; *Cobb*, 774 P.2d at 1126; *State v. Carter*, 707 P.2d 656, 660–61 (Utah 1985).

■ The record reveals that Peterson never argued that the wiretap order was deficient because it failed to require periodic reports and because it allowed nonofficers to intercept calls. We therefore need not consider these arguments on appeal. *Carter*, 707 P.2d at 660–61.

■ The record reveals that Peterson barely asserted the minimization guidelines argument in the introduction to her motion to suppress where she alleged "the wire tap order did not set forth sufficient grounds to minimize the intercepted communications." However, Peterson never

1. Peterson claims the Act conflicts with the federal Wire Interception and Interception of Oral Communications Act, 18 U.S.C. § 2510 (1970 & Supp.1992), such that the court should have preempted any provision in the state act more permissive than the federal act. Specifically, Peterson claims the state act is more permissive because the federal act allows only the state attorney general to apply for a wiretap order.

The federal law authorizes not only the "principal prosecuting attorney" of the state, but also "the principal prosecuting attorney of any political subdivision" in the state to apply for a wire-

tap order, so long as a state statute authorizes the same. *See* 18 U.S.C. § 2516(2) (Supp.1992). Likewise, section 77–23a–8(1) of the Utah statute authorizes a deputy county attorney to apply for a wiretap order.

Here, the Utah County Attorney prepared a document specifically authorizing Deputy County Attorney Taylor to apply for the wiretap order, thus fulfilling the requirements of both the federal and state acts. Because the facts of this case do not present a conflict between the federal and state acts, we need not consider the effects of any potential conflict.

developed this allegation or argued it in the body of the memorandum. Because Peterson did not specifically or particularly assert this allegation in the trial court, we decline to review it on appeal. *Id.*

We therefore affirm the court's conclusion regarding the adequacy of the wiretap order.

## COMPLIANCE WITH WIRETAP ORDER

■ Peterson claims the court erred in refusing to suppress the wiretap evidence because the officers did not comply with the order's minimization requirements. Specifically, Peterson claims the wiretap order did not provide for interception of calls between Peterson and persons other than Gallegos.

The wiretap order specified that one objective of interception was "to determine the identities of persons as yet unknown" who may be criminally involved with Gallegos. The order provided that interception could be conducted to determine "the dates, times, methods, procedures and other details of illegal transactions" for such persons.

The first of five progress reports identified Peterson by name as someone whose conversations concerned controlled substances. The progress report also noted that "on several occasions Ross Gallegos and Janel Peterson have been followed to meetings with other individuals who have been heard discussing or arranging deals involving controlled substances of one kind or another."

Given the objectives of the order, and the fact that Peterson's minimized conversations, including her early minimized conversations, revealed she was involved in transactions of controlled substances, the court correctly concluded that the interception of her conversations complied with the order.

## SUFFICIENCY OF THE EVIDENCE

Peterson claims the court erred in refusing to suppress the wiretap evidence and in refusing to arrest judgment because the evidence was legally insufficient to convict her.

Specifically, Peterson claims the evidence was insufficient to support the court's findings that she (1) actually effected the transfer or distribution of a controlled substance; (2) discussed a controlled substance and not a counterfeit one; and (3) distributed or arranged to distribute cocaine based on telephone call 215.

■ To bring a claim of insufficiency of the evidence, Peterson must marshal the evidence supporting the trial court's findings and demonstrate how the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the disputed findings. *State v. Moosman*, 794 P.2d 474, 475–76 (Utah 1990). Here, Peterson has failed to marshal the evidence supporting the court's findings regarding actual transfer, distribution of cocaine and distribution in general.[2]

■ Because Peterson has marshaled the evidence in support of the court's findings regarding call 215, we consider the sufficiency of evidence supporting the court's conclusion that she arranged for the distribution of cocaine.

The evidence and reasonable inferences drawn therefrom are as follows: The transcription of call 215 reveals a conversation between Peterson and a person named Melodee. Peterson tells Melodee she will ask Gallegos whether he can obtain some "white" for her. To interpret the vocabu-

---

2. Even had Peterson marshaled the evidence, her arguments are without merit because she bases them on a misconstruction of Utah Code Ann. § 58–37–8. Peterson claims this section requires actual transfer or actual distribution for value.

The Utah Supreme Court, in interpreting a predecessor of this section stated that "any witting or intentional lending of aid in the distribution of drugs, in whatever form the aid takes, is proscribed by the act. In other words, *any act* in furtherance of 'arrang[ing] to distribute ... a ... controlled substance' constitutes a criminal offense pursuant to the statute." *State v. Gray*, 717 P.2d 1313, 1320–21 (Utah 1986). We applied this definition to the present statute in *State v. Pelton*, 801 P.2d 184, 185 (Utah App. 1990). Thus the State, in this case, had no obligation to present evidence of actual distribution or transfer.

lary of the call, the State proffered that Officers Orndorff and West would testify that "white", used in this context, could refer to cocaine. Peterson did not object to this proffer at trial.

Based on this evidence, the court found, "In Call 215, also on March 24, 1989, the defendant arranged for the sale of 'white' to the caller. White was identified from the context of the call and the proffered testimony as a reference to cocaine."

Here, sufficient evidence, including the text and recordings of call 215 and the proffer of Orndorff's and West's testimony, supports the courts finding. Moreover, the finding supports the court's conclusion that Peterson arranged to distribute cocaine. *See State v. Pelton*, 801 P.2d 184, 185–86 (Utah App.1990) (arranging can include being a knowing link in a chain of distribution). Because sufficient evidence supports the court's finding that Peterson, during call 215, arranged to distribute cocaine, we find no clear error. We therefore affirm the finding.

## CONSTITUTIONALITY

Peterson argues that the court unconstitutionally applied section 58–37–8 to her case. Specifically, she argues that the section does not apply to her because she did not arrange for the distribution of a controlled substance *for value*. She argues that because of "the combination of the deletion of the element of value and the broad language of the arranging statute, the State cannot charge specific, general discussions concerning the use of possible controlled substances."

Peterson's argument is without merit. As stated in note one, the Utah Supreme Court, in interpreting this section has held that *"any act in furtherance of 'arrang[ing] to distribute ... a ... controlled substance' constitutes a criminal offense pursuant to the statute."* *State v. Gray*,

717 P.2d 1313, 1320–21 (Utah 1986). In addition, this court has held that the arranging statute was constitutionally applied to a defendant who was "the triggering mechanism" in the distribution of a controlled substance, even though he "was one link in a chain of events, involving six people" which eventually led to the distribution. *State v. Pelton*, 801 P.2d 184, 185 (Utah App.1990). Again, the term "for value" is not an element of the crime.

We therefore find no violation of Peterson's constitutional rights in the court's application of the statute in this case.

## CONCLUSION

We conclude that the court (1) correctly determined that the Act allows a county attorney, or a deputy county attorney to authorize application for a wiretap order; (2) made adequate findings supporting its denial of Peterson's motion to suppress the wiretap evidence; (3) correctly determined that the federal and state acts do not present a conflict in this case; (4) correctly concluded that the wiretap order was lawful; (5) correctly held that the interception of Peterson's conversations was performed within the scope of the order; (6) did not clearly err in finding Peterson had arranged for the distribution of cocaine; and (7) constitutionally applied the arranging statute.

We do not consider Peterson's other claims of error because she inadequately preserved them at trial or because she failed to marshal the evidence. Affirmed.

JACKSON and RUSSON, JJ., concur.