Argued September 16, remanded with instructions
October 28, 1974

# STATE OF OREGON, *Appellant, v.* DAVID GENE OAKES (No. 15-470), *Respondent.*

527 P2d 418

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This is a state appeal from a circuit court order suppressing both an oral confession and evidence seized as a result of that confession.

After being indicted for burglary in the first degree (ORS 164.225), defendant moved to suppress from evidence statements he had made to the police as well as allegedly stolen property subsequently seized. This motion was made on the grounds (1) that defendant had not been advised of his contitutional rights prior to questioning, and (2) that the statements were not voluntary because officers had threatened to prosecute a friend for the same crime without any basis therefor, had coerced defendant by promising to " 'take care of' this matter" if defendant would cooperate in an unrelated matter by making a narcotics "buy" which could form the basis for a prosecution of a suspected narcotics dealer, and had failed to contact his guardian before eliciting the statements even though his status as a juvenile was known from the outset.

Two arresting officers and the defendant appeared as witnesses at a hearing on this motion. Officer DeHaan testified that when initially detained—some two-and-one-half hours before any confession was elicited at the police station—defendant was found to have two handguns in his possession, and that he voluntarily admitted almost immediately that they had been taken in a burglary. The testimony of Officer Brooks was that, although he did not hear any admission at the time of the arrest, DeHaan informed him of it after the defendant had been transported to the police station. Brooks also conceded that before any admissions were made in his presence defendant was informed that the handguns found in his possession were on the "hot sheet" despite the fact that no such report had actually been received. For his part, the defendant testified that no admission was made at the time of his arrest, and that his later confession was induced by the conduct of the officers at the station—conduct which included their report to him that the guns in his possession were listed on police records as stolen.

■■ At the conclusion of the hearing, after first noting that it had been established to its satisfaction that the defendant had been given and waived his constitutional rights prior to confessing, that defendant was sufficiently "sophisticated" to make the failure to follow the law with respect to notifying his guardian of his arrest of no moment, and that the narcotics "buy" matter came after the confession and had no effect in producing it, the court went on to make these comments with reference to the question of "voluntariness":

"But what hasn't been cited here [referring to the fact that the use of the false 'hot sheet' state-

ment had not been included among the grounds for suppression in defendant's motion] * * * is this matter of the police making accusatory statements towards the defendant that these guns were hot and were so found off the hot sheet, and I think an impressive argument is made by the defendant in regard to why in the world that [statement] even had to be made if the officers' version of this thing is true, in other words if the defendant admitted from the beginning that, right at that parking lot, that these guns were the fruits of a burglary.

"* * * * *.

"I think it frankly comes down to some police work that was done in a somewhat slipshod manner and perhaps if they had done their job a little differently things would not have been as they are, but I think that [the statement referring to the 'hot sheet'] was a coercive tactic and it bears heavily on how the Court has to deal with this thing. I think it really puts the evidence in pretty much even balance here and you have to say that the State hasn't carried their burden * * *."①

---

① In State v. Johnson/Imel, 16 Or App 560, 568, 519 P2d 1053, Sup Ct *review denied* (1974), we held that in order to be sufficient motions to suppress must state with some specificity the grounds upon which they are based:

"* * * [A] motion to suppress should be as reasonably specific as possible under the circumstances in order to give the state as much notice as possible of the contentions it must be prepared to meet at a suppression hearing * * *."

We also noted there, however, that in some instances defendants are not or cannot be aware of all the relevant facts prior to the filing of their motions and that the specificity required is thus limited to that which is possible under the circumstances of each case. In this case we think it clear that at the time the motion to suppress was filed defendant could not have been aware of the falsity of the "hot sheet" statement; the trial court was not foreclosed, therefore, from considering the statement as a basis for a suppression order despite the fact that it had not been included as an allegation in the defendant's motion.

We are also aware of the Oregon Supreme Court's comments to the effect that statements made by a trial judge at the con-

A written order was entered stating, inter alia:

"The Court having heard the sworn testimony of officer Richard DeHaan and officer Billy J. Brooks, the Court finds beyond a reasonable doubt:

"1. That the verbal statements made by David Gene Oakes to officer Richard DeHaan and officer Billy J. Brooks on July 3, 1973 and July 4, 1973 were made freely without promise of consideration or lenience, and without threat.

"* * * * *.

"3. That, knowing his rights, defendant voluntarily waived them and made verbal statements to Sgt. Richard DeHaan and officer Billy J. Brooks;

"4. That at the time of said verbal statements the defendant herein was fully aware of his circumstances and understood his rights as given to him and knowingly waived all of said rights; and

"This matter further coming before the Court on defendant's Motion to Suppress being consolidated for hearing, on the question of voluntariness of defendant's verbal statements the Court finds:

"* * * * *.

"It is the further finding of the Court that the statement by Detective Brooks to defendant that the guns were on the 'hot sheet' was a coercive tactic, and that based on this finding the Court finds the State has not carried its burden of proving voluntariness by a preponderance of the evidence.

"It is hereby ORDERED that all oral statements made by defendant subsequent to his being informed by Detective Brooks that the guns were on

clusion of a hearing are irrelevant to any determination of what was ultimately "decided" unless those statements are incorporated by reference into the court's written order. State v. Swain/Goldsmith, 267 Or 527, 517 P2d 684 (1974). The trial court in this case entered a written order unequivocally indicating its decision to be that the challenged confession was "coerced." We refer to the oral statements of the court only to discern more clearly the reasoning which led to this decision; this we may do.

the 'hot sheet' be and they hereby are suppressed, together with the fruits of the crime collected on subsequent trips in and about the County of Washington.

"It is further ORDERED that the handguns in the possession of defendant and seized by Officers Brooks and DeHaan are admissible on trial of the defendant."

Our scope of review in an appeal such as this one has been delineated by the Oregon Supreme Court. In *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968), it held:

"What actually transpired is a question of fact for the trial court or jury. If the evidence sustains such historical factual findings they will not be disturbed by this court. *If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion, e.g. [sic], voluntariness or lack thereof, made by the trial court or jury.* Whether these historical facts as found are sufficient to sustain a finding of voluntariness which meets state and federal constitutional concepts of due process is another question, and one which falls within our proper scope of appellate review. The federal court also exercises this scope of review. *Clewis v. Texas,* 386 US 707, 87 S Ct 1338, 18 L ed2d 423, 426 (1967); *Davis v. North Carolina,* 384 US 737, 86 S Ct 1761, 16 L ed2d 895, 898-899 (1966); *Haynes v. Washington,* 373 US 503, 83 S Ct 1336, 10 L ed2d 513, 522 (1963); *Culombe v. Connecticut,* 367 US 568, 81 S Ct 1860, 6 L ed2d 1037, 1058-1059 (1961) * * *." (Emphasis supplied.)

In light of the comments of the trial court quoted above, it seems evident to us that the fundamental finding made below was that the defendant was telling the

truth—while Officer DeHaan was not—concerning the alleged admission at the time of his initial detention, and that, therefore, no confession of any kind was made until after a detention of several hours during which time the defendant was told, among other things, that the guns found in his possession had been reported stolen. There is evidence in the record to support this finding of historical fact. The defendant emphatically denied making any admissions until after he had been at the police station for "quite a while." No witness other than DeHaan testified that any confession had been offered at the time of the arrest; Officer Brooks conceded that he had heard no such statement by the defendant; and a police informant at the scene of the arrest was not called as a witness by the state.

■ Thus, while it is clear that the trial court found the use of the false statement to be a coercive tactic which overrode defendant's free will, this conclusion appears to be in conflict with the first finding noted above, that is, defendant's statements "were made freely without promise of consideration or lenience, and without threat." This conflict suggests to us that the court may have determined as a matter of law the use of a false statement—trickery on the part of the police —standing alone was coercion sufficient to make inadmissible as involuntary any confession elicited. If, in fact, the trial court so held, we cannot agree. *Frazier v. Cupp,* 394 US 731, 739, 89 S Ct 1420, 22 L Ed 2d 684 (1969); *State v. Carr,* 108 Ariz 203, 495 P2d 134 (1972); *State v. Braun,* 82 Wash 2d 157, 509 P2d 742 (1973); Annotation, 99 ALR2d 772 (1965).

When added to other circumstances tending to deprive a defendant of his "free will," police use of

either false statements or true statements presented in a threatening manner may be sufficient to support a finding that a confession was coerced. In every case it is the totality of the circumstances which must be considered in making that determination. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973) ; *Frazier v. Cupp,* supra.

Because the trial court noted that the use of the false statement "bore heavily" on its ultimate conclusion by producing an "even balance" in the evidence, the implication is that the court also found *some* other evidence which tended to support the conclusion that improper coercion had occurred in this instance.[2]

■ Because of these ambiguities in the suppression order, we are unable to identify the precise basis of court's decision. Consequently, as in *State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053, Sup Ct *review denied* (1974), we here remand for entry of a clarifying order or other proceedings not inconsistent with this opinion.

Remanded with instructions.

---

[2] The court's written findings are divided into two parts; the first relates to whether *Miranda* warnings were given, the second to whether the confession was voluntary. With reference to the first, a finding was made that there were no threats made. No similar finding was made with reference to the second. The court ruled out the prospective-prosecution-of-the-friend threat, the juvenile law violation, and the narcotics "buy" matter. The transcript, however, shows evidence of other threats defendant claimed the officers made against him. Consequently, we cannot tell whether the court's decision was based on a single coercive tactic—the false "hot sheet" statement—or several.