2021 IL App (1st) 182373-U

No. 1-18-2373

Order filed March 5, 2021

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 9557 |
| | ) | |
| DARRELL PITTMAN, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court's denial of defendant's motion to suppress evidence was proper where the police did not exceed the scope of a protective sweep when they searched his apartment during an eviction and discovered contraband in plain view; additional grounds not litigated before the trial court are forfeited.

¶ 2   Following a bench trial, defendant Darrell Pittman was convicted of two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and one count each of possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) and

possession of cannabis (720 ILCS 550/4(c) (West 2016)). The trial court sentenced defendant to concurrent prison terms of three years for each count of UUWF and one year for possession of a controlled substance. For the cannabis offense, the court sentenced defendant to 128 days in the Cook County Department of Corrections, time considered and actually served. On appeal, defendant contends the trial court erred when it denied his motion to quash arrest and suppress evidence because the police exceeded the scope of a protective sweep when they searched his apartment during an eviction, and thus, the contraband they discovered in a bag under the guise of the plain view doctrine should have been suppressed. We affirm.

¶ 3 Defendant was charged with two counts of UUWF for possessing a handgun and ammunition, and one count each of violation of the Firearm Owners Identification Card Act, possession of a controlled substance with intent to deliver less than one gram of cocaine, and possession with intent to deliver between 10 and 30 grams of cannabis. Prior to trial, defendant filed a motion to quash arrest and suppress evidence. In his written motion, defendant alleged that while executing an eviction order, Cook County sheriff deputies conducted a thorough search of his apartment and recovered contraband. Defendant argued that the deputies did not have a search or arrest warrant and did not receive permission to search the residence until after the search was complete. He further argued that the deputies lacked probable cause to arrest him because they had no evidence that he had committed, was committing, or was about to commit a crime.

¶ 4 At the hearing on his motion, defendant called as a witness Cook County sheriff's deputy Quentin Bradshaw who testified that in his 18 years of working in the eviction unit he had conducted "[t]ens of thousands" of evictions. Search warrants are not required for evictions, and Bradshaw did not have a search warrant in this case. During evictions, the deputies can remove

people from the premises, but not personal property. On the date in question, Bradshaw and his three partners went to an apartment in Marina Towers to evict defendant. Bradshaw and at least two of his partners were wearing body cameras. Bradshaw met with the landlord, Hrboje Cosic, in the lobby before proceeding to the apartment.

¶ 5    When the deputies arrived at the apartment, Bradshaw identified himself to defendant and told him why they were there. The four deputies entered the apartment. Bradshaw walked through the hallway and entered the bedroom. He observed cash on the nightstand next to the bed. Bradshaw searched the bedroom for people. On the side of the bed, he observed an open bag about two feet in height. Inside the top of the open bag, Bradshaw observed a clear plastic sandwich bag containing a green leafy substance. Bradshaw verified what he saw inside the bag and arrested defendant. Thereafter, Bradshaw recovered from inside the bag a gun, a magazine, and a bag of cocaine about the size of an aspirin. These items were underneath the bag of cannabis. The gun was at the bottom of the bag. Bradshaw did not observe the gun, magazine, and cocaine when he first looked at the bag, and did not know they were inside the bag until he searched it. Bradshaw did not recall meeting with Cosic in the lobby after the deputies had entered the apartment. Bradshaw had Cosic sign a consent to search form at 10:33 a.m. Bradshaw had recovered contraband before Cosic signed the form. Bradshaw inventoried about $3300 and three large containers of coins. Bradshaw did not know if an eviction letter had been sent to defendant. Defendant was the only occupant inside the apartment.

¶ 6    On cross-examination by the State, Bradshaw testified that between 9 and 10 a.m. on May 31, 2017, he and his three partners, Deputies Stacy Youpel, Phelan, and Generala,[1] arrived at the

---

[1] The first names for Deputies Phelan and Generala do not appear in the record.

apartment building at 300 North State Street to execute an eviction. The deputies met with Cosic in the lobby. Cosic signed two documents – an acknowledgment that he was responsible for any damage if the deputies had to break open the door, and a form that gives the landlord possession of the unit after the eviction is complete. After signing the documents, Cosic gave Bradshaw a key to the apartment door and the deputies went to the apartment.

¶ 7    Bradshaw knocked on the apartment door and announced their office. Defendant opened the door. Bradshaw identified defendant in court. Bradshaw told defendant they were there to evict him. The four deputies entered the apartment. Bradshaw immediately smelled unsmoked cannabis. Bradshaw testified that he was familiar with the scent of unsmoked cannabis and had smelled it hundreds of times during prior evictions. He was also familiar with how cannabis was packaged. Defendant immediately appeared agitated and asked what the deputies were going to do with his belongings. Defendant began backpedaling in the hallway. Bradshaw followed him. Bradshaw explained that upon entering an apartment, their normal procedure is to take control of the people inside by gathering them in the living room. The deputies then check the other rooms to insure no other people are present inside the residence. Bradshaw testified that they conduct a safety sweep of the residence for people, they do not search the residence or items within the residence.

¶ 8    Bradshaw entered the bedroom, and the smell of cannabis became stronger. He observed cash on the nightstand. Bradshaw walked around the bed to ensure no one was hiding on the other side. He opened the window shades to get a better view of the room. He acknowledged there could have been people on the balcony outside. Youpel entered the room. Bradshaw bent down and looked underneath the bed to see if anyone was hiding there. No one was. When he bent down, the cannabis smell became stronger. Bradshaw observed a black bag next to the nightstand. The top

of the bag was open. As Bradshaw rose, he looked in the open top of the bag and observed a clear plastic bag containing cannabis. Bradshaw exited the bedroom to obtain a flashlight from one of his partners to verify his observation.

¶ 9        Bradshaw went to the other side of the apartment and observed defendant entering another room. Defendant was very agitated. Bradshaw told defendant to exit the room because the deputies had not yet checked it for other people. Bradshaw entered the room and looked around for his safety because he did not know if defendant was trying to grab something or someone from inside the room.

¶ 10        Bradshaw obtained a flashlight and returned to the bedroom to verify what he saw inside the open bag. Youpel also entered the bedroom. Bradshaw did not manipulate the bag with his hands. He shined the flashlight on the bag and confirmed his observation of two clear plastic sandwich bags containing a green leafy substance of suspect fresh cannabis. Youpel photographed the open bag prior to the deputies opening it further.

¶ 11        Bradshaw testified that the video recorded by his body camera fairly and accurately represented what occurred during the eviction. Defense counsel offered a stipulation, which was accepted by the State, that the eviction and order for possession were legal. The State played the video in court, and Bradshaw narrated what occurred.

¶ 12        Bradshaw explained that the video depicted the deputies arriving in the lobby of the apartment building and meeting with Cosic, who signed two documents. The deputies went to the apartment and defendant opened the door. Bradshaw testified that when he said "I am almost sure" on the video, he meant he was almost sure there was cannabis inside the apartment. Bradshaw pointed out where the bag could be seen on the floor between the nightstand and the bed. He noted

the point where he searched the other room defendant had entered to see if there was anything there that would jeopardize the deputies' safety. Bradshaw touched a driver's license to see if it was defendant's, but it was not. Bradshaw returned to the bedroom and illuminated the open bag with a flashlight. Bradshaw testified that prior to that point, he had not touched the bag. The only items he had touched were the window shades and the driver's license. Bradshaw explained that his actions were based on what he saw and smelled. Youpel photographed the bag prior to the deputies touching it.

¶ 13   In court, Bradshaw identified a photograph of his view looking inside the top of the open bag before it was touched. He testified that with his personal view and angle, he was able to see more inside the bag than what the camera depicted. Bradshaw testified that after observing the cannabis, he seized it and then searched the bag. A thorough search of the apartment was later conducted using a K-9 unit.

¶ 14   On redirect examination, Bradshaw testified that he entered the second room because he saw defendant enter that room without a deputy. Bradshaw entered to see if defendant was getting something that could jeopardize the deputies' safety. Bradshaw denied that he could hear a zipper being unzipped on the video.

¶ 15   On recross-examination, Bradshaw testified that a typical eviction takes 10 to 20 minutes, and he conducts between 10 and 20 evictions in one day. Once the deputies determine that no other people are inside the residence, they announce "clear." No one had announced "clear" prior to Bradshaw observing the cannabis in the bag. Bradshaw's partners were not able to search the other rooms in the apartment because they were dealing with defendant who was being uncooperative.

¶ 16    This court viewed the video and found it consistent with Bradshaw's testimony. Upon entering the apartment, the deputies repeatedly asked defendant to have a seat in the living room. Defendant refused to comply and was very argumentative. The bedroom was dark. Upon entering the bedroom, Bradshaw immediately asked Youpel for a flashlight, then crossed to the other side of the bedroom and opened the blinds. Defendant disobeyed the deputies' orders to remain in the living room. He appeared to attempt to enter the bedroom where Bradshaw was but was blocked by one of the deputies. Defendant entered another room by himself. Bradshaw exited the bedroom and ordered defendant to exit the other room and go to the living room. Using a flashlight, Bradshaw briefly looked around the other room, which appeared to be a walk-in closet. Bradshaw returned to the bedroom, and while standing next to the bed looked down. He stepped out of the bedroom and asked for a flashlight. Bradshaw returned to the same spot in the bedroom and shined the flashlight down illuminating the top of the bag. He called for Youpel to join him stating, "I want you to see this." Youpel entered the bedroom and Bradshaw told her, "[t]here's a lot of marijuana in this bag. It's open. I can see." He then stated, "[t]here's more than enough. I can open it now because it's in plain view." As Bradshaw reached towards the bag, Youpel told him to wait and photographed the top of the bag. Thereafter, Bradshaw widened the opening of the bag. Defendant was handcuffed and told he was under arrest for possession of marijuana.[2]

---

[2] In his briefs, defendant relies on an additional video recorded by Youpel's body camera which was not introduced or admitted into evidence at the suppression hearing or trial. Defendant claims that because Youpel's video was on the same disc as Bradshaw's video, which was admitted as People's exhibit 1, Youpel's video was also admitted into evidence. We disagree. Youpel's video was not admitted into evidence at the suppression hearing or trial, and therefore, may not be considered by this court. *People v. Blankenship*, 406 Ill. App. 3d 578, 590 (2010). Moreover, defendant cites no authority for his assertion in violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018). Accordingly, we give no consideration to Youpel's video.

¶ 17    The State moved for a directed finding, arguing that Bradshaw credibly testified that he conducted a lawful safety sweep of the apartment and everything he observed prior to seizing the bag was in his plain view. Defense counsel pointed out that the bag was not inventoried and argued that Bradshaw's testimony that he could see the cannabis inside the bag was not credible.

¶ 18    The trial court found that the deputies had a valid order for possession and lawfully entered the apartment. The court noted that Bradshaw's hands were not visible on the video when he initially bent down toward the bag. The court did not hear the bag being unzipped on the video. The court stated that it could not tell from the video whether Bradshaw made the opening of the bag wider so he could view its contents. The court found that Bradshaw searched the bedroom well after it was apparent that there were no people in that room. It further found, however, that because the bag was unzipped, Bradshaw may have been able to observe the cannabis from the top of the bag without manipulating it. The court concluded that defendant failed to meet his burden of showing that there was an unlawful search. Consequently, the court granted the State's motion for a directed finding and denied defendant's motion to quash arrest and suppress evidence.

¶ 19    The State nol-prossed the charge for violation of the Firearm Owners Identification Card Act and proceeded to trial on the four remaining counts. At trial, the State, joined by defendant, asked the court to enter Bradshaw's testimony from the suppression hearing into evidence as stipulated testimony for trial.

¶ 20    Bradshaw testified substantially the same as he did at the suppression hearing regarding his team's execution of defendant's eviction, including his immediate smell of cannabis upon entering the apartment and his observation of a bag of cannabis inside an open bag in the bedroom. He added that the open bag was a black MCM bag. Bradshaw identified defendant in court.

Defendant was arrested for possession of the cannabis inside the bag. At the time of the arrest, Bradshaw had only looked inside the top of the open bag, he had not yet moved the bag from its location next to the bed. After Bradshaw advised defendant of his *Miranda* rights, defendant stated, "[p]lease don't charge me for the weed, Big Homie."

¶ 21 The deputies called for a K-9 unit and waited over an hour for that unit to arrive at the apartment. During that time, no one went near or moved the MCM bag. Bradshaw eventually recovered the bag from the bedroom and brought it into the kitchen. He placed the bag on the kitchen table and removed its contents. Inside the top of the MCM bag were two plastic bags containing cannabis, some empty small clear plastic baggies and sandwich bags, and scales. Also inside the bag was a small clear plastic bag containing suspect cocaine. Underneath the cannabis inside the MCM bag, Bradshaw found an unloaded Glock 26 9-millimeter semiautomatic gun with a 30-round clip and two magazines loaded with ammunition. Bradshaw recovered several thousand dollars in cash and some coins in the bedroom. He also recovered defendant's ID in the apartment.

¶ 22 Defendant was transported to the sheriff's "lockup" in Maywood. About 4:15 p.m., Bradshaw and Youpel interviewed defendant. Defendant denied knowing that the gun was stolen and that it was in the MCM bag. Defendant stated that he was going to smoke the cannabis.

¶ 23 The State played a segment from Bradshaw's body camera video that depicted the first time he touched the MCM bag. Bradshaw identified an enlarged photograph depicting his view looking inside the top of the open bag before it was touched. He also identified a second photograph taken moments later after Youpel opened the bag further to take a better photograph.

¶ 24 On cross-examination, Bradshaw acknowledged that he did not record his interview with defendant at the lockup. Bradshaw did not inventory the MCM bag. Defense counsel introduced a

backpack in court for demonstrative purposes. Bradshaw testified that the backpack was a little smaller than the MCM bag. Bradshaw could not observe the gun and cocaine without searching inside the bag. Bradshaw searched the bag after defendant was arrested. Bradshaw never saw defendant handle the gun, cannabis, or cocaine. The gun and plastic bags containing cannabis were not sent for fingerprint or DNA analysis. Bradshaw did not know who placed the cannabis and gun inside the MCM bag. Bradshaw denied that he had to open the MCM bag to observe the cannabis. He acknowledged that the gun was on the bottom of the bag and he had to remove all the other items inside the bag before he saw the gun. The deputies always expect more than one person will be inside a residence when they conduct an eviction. In this case, defendant was the only occupant present. Additional loose cannabis was scattered inside the MCM bag. The deputies scooped the loose cannabis together but did not package or inventory it because it was not relevant.

¶ 25     On redirect examination, Bradshaw explained that the loose cannabis was a small amount that would not cause concern during an eviction. The bag of cannabis at the top of the MCM bag attracted Bradshaw's attention as contraband. By the time the apartment and MCM bag were searched, the incident was no longer an eviction, but had become a narcotics arrest.

¶ 26     The State presented a stipulation that defendant had a 2007 felony conviction for possession of a controlled substance with intent to deliver and a certified copy of that conviction to satisfy the element of the predicate felony offense for the two UUWF counts.

¶ 27     The State presented a second stipulation that forensic scientist Gina Ramano tested the bag of white powder recovered from the MCM bag and found it positive for 0.51 gram of cocaine. Ramano also tested one of the two bags of plant material recovered by Bradshaw and found it positive for 12.71 grams of cannabis.

¶ 28    The trial court found defendant guilty of two counts of UUWF for possessing the gun and the ammunition. As to the drug charges, the court noted that the scales and baggies were not inventoried and found that the drug amounts recovered were not indicative of an intent to deliver, but were more consistent with personal use. Consequently, the court found defendant guilty of the lesser included offenses of possession of a controlled substance and possession of cannabis.

¶ 29    In his motion for a new trial, defendant argued that Bradshaw's testimony at the suppression hearing and at trial was not credible. He also argued that deputies are prohibited from conducting searches during evictions, and, in this case, they conducted an illegal search and recovered contraband. At the hearing on the motion, defense counsel argued that, even if Bradshaw observed cannabis inside the bag, he was not allowed to search the bag, but instead, should have sealed the bag and taken it with him. The State responded that Bradshaw's observation of the cannabis gave him probable cause to arrest defendant and search the bag. The trial court denied defendant's posttrial motion.

¶ 30    The trial court sentenced defendant to concurrent prison terms of three years for each count of UUWF and one year for possession of a controlled substance. For the cannabis offense, the court sentenced defendant to 128 days in the Cook County Department of Corrections, time considered and actually served.

¶ 31    On appeal, defendant contends the trial court erred when it denied his motion to quash arrest and suppress evidence because the deputies exceeded the scope of a protective sweep when they searched his apartment during an eviction, and thus, the contraband they discovered in a bag under the guise of the plain view doctrine should have been suppressed. Defendant argues that the deputies went beyond a cursory visual inspection of a protective sweep and conducted an illegal

warrantless search of his apartment for contraband. He further argues that the cannabis was not in plain view because Bradshaw and Youpel entered and exited the bedroom once without seeing the cannabis, and then used a flashlight and opened the bag further to determine it was contraband.

¶ 32    The State responds that the trial court properly denied the motion to suppress because the deputies found the cannabis in plain view during a protective sweep of an apartment they were lawfully allowed to be in to conduct an eviction. The State argues that the protective sweep lasted no longer than was necessary, and the cannabis was in plain view in an open container. It further argues that the cannabis gave Bradshaw probable cause to arrest defendant, and therefore, the subsequent search during which the firearm, ammunition and cocaine were found was legal.

¶ 33    Our review of the trial court's ruling on a motion to suppress evidence presents questions of both fact and law. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). The trial court's factual findings are given great deference and will not be disturbed on review unless they are against the manifest weight of the evidence. *People v. Burns*, 2016 IL 118973, ¶ 15. However, the court's ultimate ruling on the motion is a question of law which we review *de novo. Id.* ¶ 16. At a hearing on a motion to suppress, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Ballard*, 206 Ill. 2d 151, 162 (2002). When reviewing the trial court's ruling on a motion to suppress, we may consider the testimony presented at trial as well as the testimony from the suppression hearing. *People v. Eubanks*, 2019 IL 123525, ¶ 61.

¶ 34    The fourth amendment of the United States Constitution and the Illinois Constitution protect citizens from unreasonable searches and seizures in their homes, effects and persons. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Reasonableness is measured with an objective

standard by analyzing the totality of the circumstances. *People v. Moss*, 217 Ill. 2d 511, 518 (2005). Generally, to be deemed a reasonable search and seizure under the fourth amendment, police must obtain a warrant supported by probable cause. *People v. Johnson*, 237 Ill. 2d 81, 89 (2010).

¶ 35    Here, defendant conceded at the suppression hearing that the eviction and order for possession of the apartment were legal. Defendant therefore acknowledged that the deputies had the legal authority to enter the apartment and evict him. He argues, however, that the deputies exceeded the scope of a lawful protective sweep and conducted a search for contraband.

¶ 36    A protective sweep is a quick and limited search of premises conducted to protect the safety of police officers or others, and is narrowly confined to a cursory visual inspection of places where a person may be hiding. *People v. Pierini*, 278 Ill. App. 3d 974, 979-80 (1996) (citing *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). The rationale for allowing a protective sweep is so police officers can ensure that other persons who may be inside the residence do not launch an unexpected attack. *Id.* at 980 (citing *Buie*, 494 U.S. at 333). A protective sweep lasts only for as long as necessary to dispel the reasonable suspicion of danger. *Id.* (citing *Buie*, 494 U.S. at 335-36).

¶ 37    Here, the record reveals that the deputies did not exceed the scope of a protective sweep. Bradshaw testified that when he entered the apartment, he immediately smelled unsmoked cannabis. Defendant was agitated and asked the deputies what they were going to do with his belongings. Defendant backpedaled through the hallway and Bradshaw followed him. The video shows the deputies repeatedly telling defendant to have a seat in the living room. Defendant refused to comply and was very argumentative. Bradshaw testified that he entered the bedroom, and the smell of cannabis became stronger. He walked around the bed to ensure no one was hiding on the other side and opened the blinds to get a better view. The video shows that the bedroom was dark

and Bradshaw immediately asked Youpel for a flashlight. Bradshaw testified that he bent down and looked under the bed to see if anyone was hiding there. The cannabis smell became stronger. Bradshaw then observed a black bag sitting on the floor between the bed and the nightstand. The top zipper of the bag was open. As Bradshaw rose from the floor, he looked in the open top of the bag and observed a clear plastic bag containing cannabis.

¶ 38     The video shows that defendant disobeyed the deputies' orders to remain in the living room and was walking around the apartment very agitated. He appeared to attempt to enter the bedroom where Bradshaw was but was blocked by another deputy. Defendant then entered a room across from the bedroom by himself. Bradshaw exited the bedroom and ordered defendant to exit the other room and go to the living room. Using a flashlight, Bradshaw briefly looked around the other room, which appeared to be a walk-in closet. Bradshaw testified that he looked around that room for his safety because he did not know if defendant was trying to grab something or someone from inside that room. Bradshaw returned to the bedroom where he was previously standing next to the bed and looked down. He stepped out of the bedroom and asked for a flashlight. He then returned to the same spot in the bedroom and shined the flashlight down illuminating the top of the bag. Bradshaw testified that he confirmed his observation of two clear plastic sandwich bags containing suspect fresh cannabis.

¶ 39     The record thus reveals that Bradshaw did not unlawfully search the apartment for contraband or narcotics. Instead, the record shows that during a protective sweep of the apartment, Bradshaw made a cursory visual inspection of the bedroom for people and observed the cannabis in an open bag on the bedroom floor.

¶ 40     Moreover, Bradshaw's testimony and the video established that Bradshaw observed the cannabis in plain view during the protective sweep. The plain view doctrine allows for the seizure of evidence discovered by an officer who, although not looking for evidence against the defendant, inadvertently comes across an incriminating item. *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). Under the plain view doctrine, a police officer may seize an item without a warrant if three requirements are satisfied: (1) the officer views the item from a place where he is lawfully entitled to be; (2) the incriminating character of the item is immediately apparent; and (3) the officer has a lawful right of access to the item. *People v. Jones*, 215 Ill. 2d 261, 271-72 (2005). The seizure of an item in plain view is presumptively reasonable and not an invasion of privacy, assuming that the police have probable cause to associate the item with criminal activity. *Id.* at 272. Plain view requires probable cause to justify a seizure. *Id.* If the officer lacks probable cause to believe an item in plain view is contraband without conducting a further search of the item, *i.e.*, if the incriminating character of the item is not immediately apparent, the plain view doctrine cannot justify the seizure. *Id.* When determining whether probable cause exists, an officer may rely on his training and experience to draw inferences and make deductions. *Id.* at 274. A court must examine the events leading up to a seizure and decide whether the facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Id.*

¶ 41     Here, as discussed above, Bradshaw was conducting a lawful protective sweep of the bedroom during an eviction when he observed the cannabis inside an open bag on the bedroom floor. Bradshaw therefore viewed the cannabis from a place where he was lawfully entitled to be. The record further shows that it was immediately apparent to Bradshaw that the item he observed in the bag was cannabis. Bradshaw testified that he was familiar with the scent of unsmoked

cannabis and had smelled it hundreds of times during prior evictions. He was also familiar with how cannabis was packaged. Bradshaw immediately smelled cannabis when he entered defendant's apartment, the smell became stronger when he entered the bedroom, and even stronger when he bent down and looked underneath the bed. As Bradshaw rose from the floor, he looked in the open top of the MCM bag and observed a clear plastic bag containing cannabis. Bradshaw testified that he did not touch or manipulate the bag with his hands. He shined a flashlight on the bag and confirmed his observation of two clear plastic sandwich bags containing fresh cannabis. The video showed that Bradshaw called Youpel into the bedroom and told her, "[t]here's a lot of marijuana in this bag. It's open. I can see." He further stated, "[t]here's more than enough. I can open it now because it's in plain view." Youpel photographed the top of the bag before Bradshaw touched it. The photograph was admitted into evidence. In addition, the record shows that Bradshaw had a lawful right of access to the item where, based on his training and experience, the facts stated above gave him probable cause to believe defendant was in possession of cannabis. *Jones*, 215 Ill. 2d at 271-74.

¶ 42    The trial court found that because the bag was unzipped, Bradshaw may have been able to observe the cannabis from the top of the bag without manipulating it. Consequently, the court concluded that defendant failed to meet his burden of showing that there was an unlawful search. Based on this record, we find that the trial court's factual findings were not against the manifest weight of the evidence, and its denial of defendant's motion to suppress was proper. *Burns*, 2016 IL 118973, ¶¶ 15-16.

¶ 43    Defendant also contends that the seizure of the cannabis was unlawful because: (1) his reasonable expectation of privacy in his personal belongings was violated; (2) the State never

proved he was given proper notice of the eviction; (3) the smell of cannabis did not justify the search; and (4) the deputies did not determine if the cannabis was legal medical marijuana. Defendant did not raise these arguments before the trial court and has raised them for the first time in this appeal. This court has previously held that where a defendant fails to raise an allegation in his written motion to suppress and does not raise the issue in his posttrial motion, the issue is forfeited. See *People v. Williams*, 272 Ill. App. 3d 868, 876 (1995); *People v. Cleesen*, 177 Ill. App. 3d 103, 114 (1988).

¶ 44    Section 114-12 of the Code of Criminal Procedure of 1963, which provides the requirements for motions to suppress evidence, specifically states, in pertinent part:

>       "The motion shall be in writing and state facts showing wherein the search and seizure were unlawful. The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were unlawful shall be on the defendant." 725 ILCS 5/114-12(b) (West 2016).

In analyzing this section, the Fourth District of this court has adopted the following analysis:

>       " 'A motion to suppress is, in effect, a pleading to the extent that it frames the issues to be determined in a pretrial hearing on the motion. The fundamental role of a pleading is to give an opposing party notice of the pleader's position concerning the facts and law so that the opposing party can begin to prepare his defense. A pleading thus both defines and limits the areas of consideration at a trial or other evidentiary hearing ***, by enabling the court to determine the relevance of offered evidence.' " *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 60 (quoting *State v. Johnson*, 519 P.2d 1053, 1057 (Or. Ct. App. 1974)).

¶ 45     Our supreme court has held that where a defendant raises arguments on appeal that are distinct from the arguments he raised in his motion to suppress before the trial court, the defendant has not adequately preserved his claims for review. *People v. Hughes*, 2015 IL 117242, ¶ 45. In *Hughes*, the defendant, who was charged with and ultimately convicted of first degree murder, filed a motion to suppress claiming that his confession was involuntary. *Id.* at ¶¶ 1-2. Before the trial court, the defendant argued that his statements were involuntary because the police questioned him off camera and without advising him of his *Miranda* rights, and due to physical coercion from handcuffs being kept on him for an excessively long time. *Id.* at ¶ 2. The trial court denied his pretrial motion to suppress, and also denied his posttrial motion where the defendant raised the issue again. *Id.* On appeal, the defendant argued that his confession was involuntary and should have been suppressed for reasons different than what he argued before the trial court, including his age, educational level, sleep and food deprivation, prior substance abuse, deceptive conduct by police, and lack of experience with the criminal justice system. *Id.* at ¶ 25. The State argued that the defendant waived the issue for appeal because he did not present these reasons for suppression to the trial court. *Id.* at ¶ 26. The appellate court, with one justice dissenting, found that the issue was not forfeited because he had raised the issue of voluntariness in his posttrial motion. The court concluded that the confession should have been suppressed, and reversed and remanded for a new trial. *Id.* at ¶ 27.

¶ 46     On appeal, the supreme court found that the defendant's reasons for suppression in the trial and appellate courts were almost entirely distinct from one another. *Id.* at ¶ 40. The court noted that the defendant presented no evidence or arguments to the trial court for the claims he raised on appeal. *Id.* at ¶ 41. The court therefore found that when the defendant failed to raise his claims in

the trial court, he deprived the State of its opportunity to present evidence and arguments challenging those claims. *Id.* at ¶ 46. The court further found that the defendant also deprived the trial court of the opportunity to decide the issue on those bases, and deprived the appellate court of an adequate record to make its determination on review. *Id.* The court concluded that the defendant did not adequately preserve his claims for appeal, and that the trial court did not err when it denied the defendant's motion to suppress. *Id.* at ¶ 47.

¶ 47    Similar to *Hughes*, in this case, defendant has raised issues on appeal that were not argued before the trial court. He did not raise these issues in his written motion to suppress, and he never presented any evidence or arguments in support of these specific claims before the trial court. Consequently, the State never had the opportunity to presented evidence or arguments in response to these claims, and the trial court did not have an opportunity to consider defendant's arguments. In addition, because defendant did not raise these issues below, this court is deprived of an adequate record to reach the merits on appeal. Accordingly, we conclude that defendant did not preserve these claims for appeal and they are forfeited.

¶ 48    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.